## VERNON L. COBHAM *v.* COMMISSIONER OF CORRECTION
### (SC 16393)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued May 24—officially released September 11, 2001

*Temmy Ann Pieszak*, chief of habeas corpus services, with whom was *Margaret E. Flynn*, deputy assistant public defender, for the appellant (petitioner).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Walter Flanagan*, state's attorney, and *Angela Macchiarulo*, assistant state's attorney, for the appellee (respondent).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this appeal is whether a petition for habeas corpus is an appropriate means by which a defendant can challenge the legality of his sentence. The petitioner, Vernon L. Cobham, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus.[1] He claims that the habeas court improperly concluded that the sentence that had been imposed by the trial court in his underlying criminal trial was lawful and in compliance with the plea agreement between the petitioner and the state. We conclude that the petitioner prematurely brought this petition for a writ of habeas corpus, rather than directly appealing the sentence or moving the trial court, pursuant to Practice Book § 43-22,[2] to

[1] The petitioner appealed from the judgment of the habeas court to the Appellate Court pursuant to General Statutes § 52-470 (b), and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[2] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

correct the sentence. Accordingly, we affirm the habeas court's judgment dismissing the petition.

The record discloses the following relevant facts and procedural history. On January 21, 1993, the petitioner, pursuant to his plea agreement with the state,[3] entered written pleas of nolo contendere to the charges of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2),[4] and burglary in the first degree in violation of General Statutes § 53a-101 (a) (1).[5] The petitioner also agreed to a sentence pursuant to which he would serve a total effective prison term of fourteen years.[6]

Pursuant to Practice Book § 39-19,[7] the trial court, as part of its plea canvass, informed the petitioner that

---

[3] Under the plea agreement, the state nolled a number of other charges against the petitioner that are not relevant to this appeal.

[4] General Statutes § 53a-134 provides in relevant part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . .

"(b) Robbery in the first degree is a class B felony provided any person found guilty under subdivision (2) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[5] General Statutes § 53a-101 provides in relevant part: "(a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with . . . a deadly weapon or dangerous instrument . . . .

"(c) Burglary in the first degree is a class B felony provided any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[6] The petitioner and the state initially had reached agreement on a sentence of ten years incarceration. The trial court, however, declined to accept the agreement, expressing its opinion that this case warranted the maximum sentence for the offenses charged.

[7] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

the counts to which he had pleaded were class B felonies, and, thus, each count individually carried maximum penalties of twenty years imprisonment and/or fines of $10,000. The trial court also explained that each count individually carried a mandatory minimum sentence of five years incarceration, which could not be suspended.[8] Thereafter, the trial court sentenced the petitioner to serve two concurrent terms of fourteen years incarceration. The trial court noted for the record that the petitioner had to serve, for each count, the mandatory minimum of five years incarceration as required under §§ 53a-134 (b) and 53a-101 (c). The petitioner's mittimus indicated that he was required to serve two concurrent terms of fourteen years incarceration with a minimum mandatory sentence of ten years. The petitioner did not object to the sentence imposed, move to withdraw his plea of nolo contendere, or file an appeal.

More than three years later, the issue of whether the department of correction (department) properly understood the defendant's sentence was brought to the trial court's attention. Specifically, Louis Pace, the clerk of the geographical area court, notified the trial court that the department was considering the release of the peti-

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

[8] The trial court explained to the petitioner in relevant part: "[A plea of nolo contendere] says, 'I know what the penalties are, [I know] that I face, up to forty years, up to $20,000, and five years on *each* of the crimes is not suspendable,' *which could well expose you to a minimum nonsuspendable amount of ten years.*" (Emphasis added.)

tioner after he had served five years of his sentence. The trial court held a hearing on October 7, 1996, at which Pace testified that he had brought the matter to the trial court's attention because he believed that the department's view of the petitioner's sentence differed from the sentence that the trial court had imposed.

The trial court subpoenaed Mary Jane Steele, a record specialist in the department, to testify at the hearing with regard to the petitioner's sentence. Steele testified that she had reviewed the petitioner's sentence and stated that, based on his fourteen year sentence, the petitioner would be eligible for parole in July, 2002, having then served one half of his sentence, or seven years. The trial court responded that Steele's estimated parole eligibility date was incorrect because it had sentenced the petitioner to serve consecutively the two five year minimum sentences, thereby requiring him to serve a minimum mandatory sentence of ten years.

The trial court also subpoenaed John Sieminski, a counselor supervisor in the department, to testify with regard to the petitioner's sentence. Sieminski testified that according to his interpretation of the mittimus, the trial court had sentenced the petitioner to two concurrent fourteen year terms and that the petitioner had to serve consecutively each of the two mandatory minimum sentences of five years by the court's direction. Sieminski also testified, however, that he had doubts about the validity of the mittimus because he previously had not seen such a sentence with regard to the mandatory minimum sentences.[9]

In light of the apparent confusion with regard to the petitioner's sentence, the trial court clarified its

---

[9] The petitioner's attorney stated on the record that he thought the trial court sentenced the petitioner to serve concurrently the two mandatory minimum terms. He also stated that he had been unaware of the language of the mittimus until Pace contacted him shortly before the hearing.

intention in imposing the sentence: "It was clearly the intention of the court . . . [that] [o]n each count [the petitioner] be sentenced to fourteen years. The two counts were to run concurrently. On each of the mandatory minima, he was sentenced to the mandatory minimum five year sentence. Those two sentences are to run consecutively. The effective sentence is fourteen years to serve. The mandatory minimum in consecutive terms is ten years to serve. That was the intent [of the trial court], that's what was said, apparently not clearly enough to satisfy everyone, but it's being clarified now." After the trial court clarified the sentence, the petitioner did not object to the clarified sentence, move to withdraw his plea of nolo contendere, or file an appeal.

The petitioner thereafter filed an amended petition for a writ of habeas corpus, claiming that the judgment mittimus was inconsistent with the trial court's pronouncement of judgment and the law because it ordered him to serve consecutively the two minimum mandatory sentences.[10] The petitioner contended that because he was incarcerated in accordance with an illegal sentence, his confinement was unlawful. He also asserted that he had raised this claim previously before the trial court during the hearing on October 7, 1996, and that the court had refused to correct the sentence. The petitioner requested the habeas court to correct his sentence to require him to serve a total effective sentence of fourteen years, five years of which were mandatory.

[10] On July 30, 1996, the petitioner originally had filed a pro se petition for a writ of habeas corpus with the habeas court on the ground that the mandatory minimum portion of his sentence was illegal in that it unconstitutionally negated the effect of "good time" computation and, thus, extended the time he was to serve. The petitioner had requested that the habeas court correct his sentence. The respondent, the commissioner of correction, had denied the petitioner's allegations, stating that the petition was incomplete and/or inaccurate. Thereafter, the petitioner obtained counsel and filed the amended petition for a writ of habeas corpus that is the basis of this appeal and is discussed further in the text of this opinion.

The respondent, the commissioner of correction, thereafter filed an answer denying the allegations of the petition. Additionally, the respondent asserted that the petitioner's claim was procedurally defaulted because he had failed to raise his claim before the trial court during sentencing, subsequent to sentencing pursuant to Practice Book § 43-22; see footnote 2 of this opinion; or on direct appeal. The respondent also claimed that the petitioner could not establish cause for the procedural default, nor prejudice that would excuse the procedural default.[11] Thus, the respondent contended, the petitioner's claim should not be reviewed for the first time during a habeas corpus proceeding.

The petitioner filed a reply, claiming that the respondent could not assert a defense of procedural default because the petitioner had raised the issue of his illegal sentence, albeit off the record, to the trial court. The petitioner also claimed that § 43-22 did not act as a procedural bar to his claim because it contained no time limitations concerning when he must file a motion to correct an illegal sentence. Finally, the petitioner maintained that the respondent could not assert a defense of procedural default because he was not seeking to vacate his plea or to reverse his conviction.

After a hearing, the habeas court, finding that it properly could hear the petition, dismissed the petition, concluding that the trial court, by imposing a nonsuspendable minimum sentence of ten years, properly had sentenced the petitioner and correctly had followed the

---

[11] As we discuss more fully later in the text of this opinion, this court will review a habeas claim that was not properly raised at trial or on direct appeal because of a procedural default if the petitioner demonstrates good cause for his failure to raise the claim and actual prejudice resulting from the impropriety claimed in the habeas petition. See *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 132, 629 A.2d 413 (1993); *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 409, 589 A.2d 1214 (1991).

plea agreement between the petitioner and the state.[12] This appeal followed.

The petitioner claims that the habeas court improperly dismissed his petition for a writ of habeas corpus to correct his allegedly illegal sentence. Specifically, the petitioner maintains that the habeas court improperly: (1) dismissed his petition in light of the legally and logically impossible sentence imposed by the trial court, which requires the petitioner to serve two concurrent sentences while simultaneously requiring him to serve consecutively the two mandatory minimum sentences; (2) concluded that the statutory language of the crimes to which he had pleaded nolo contendere required that he serve the mandatory minimum sentences consecutively; (3) concluded that the sentence imposed by the trial court constituted specific performance of the plea agreement between him and the state; and (4) concluded, without supporting evidence, that the trial court had made clear its intent that the mandatory minimum sentences were to be imposed consecutively and that such imposition would not affect the calculation of the petitioner's eligibility for parole or time of release. We decline to reach the merits of any of the petitioner's claims, however, due to a procedural default, in that the petitioner prematurely has challenged his sentence before the habeas court.

This court has held that the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. *State* v. *Walzer*, 208 Conn. 420, 424–25, 545 A.2d 559 (1988); see also *State* v. *Mollo*, 63 Conn. App. 487, 490, 776 A.2d 1176,

[12] The habeas court also noted that the minimum sentence imposed by the trial court did not limit the department from computing an earlier time of release or parole eligibility.

cert. denied, 257 Conn. 904, 777 A.2d 194 (2001); *State
v. Tuszynski*, 23 Conn. App. 201, 206, 579 A.2d 1100
(1990). Practice Book § 43-22, which provides the trial
court with such authority, provides that "[t]he judicial
authority may at any time correct an illegal sentence
or other illegal disposition, or it may correct a sentence
imposed in an illegal manner or any other disposition
made in an illegal manner." "An 'illegal sentence' is
essentially one which either exceeds the relevant statu-
tory maximum limits, violates a defendant's right
against double jeopardy, is ambiguous, or is internally
contradictory." *State* v. *McNellis*, 15 Conn. App. 416,
443–44, 546 A.2d 292, cert. denied, 209 Conn. 809, 548
A.2d 441 (1988). We previously have noted that a defen-
dant may challenge his or her criminal sentence on the
ground that it is illegal by raising the issue on direct
appeal or by filing a motion pursuant to § 43-22 with
the judicial authority, namely, the trial court.[13] See *Cope-
land* v. *Warden*, 225 Conn. 46, 47 n.2, 621 A.2d 1311
(1993). We have not, however, had the occasion to
express an opinion as to "whether habeas corpus is an
appropriate vehicle by which to challenge the legality
of a sentence." Id. We now conclude that before seeking
to correct an illegal sentence in the habeas court, a
defendant either must raise the issue on direct appeal
or file a motion pursuant to § 43-22 with the trial court.

As we noted in *Copeland*, "it is to a defendant's advan-
tage to move in the trial court, pursuant to [§ 43-22],
to correct a purportedly illegal sentence after the sen-

---

[13] We recognize that this court previously has suggested that the language
"judicial authority," found in § 43-22, included the appellate courts as well
as the trial court that had ordered the sentence. See *State* v. *Daniels*, 207
Conn. 374, 387, 542 A.2d 306 (1988) ("[b]oth the trial court and this court,
on appeal, have the power, at any time, to correct a sentence that is illegal");
see also *State* v. *Mitchell*, 37 Conn. App. 228, 232, 655 A.2d 282 (1995); *State*
v. *Guckian*, 27 Conn. App. 225, 245, 605 A.2d 874 (1992). Today we clarify
the meaning of "judicial authority" in § 43-22, however, to mean solely the
trial court.

tence is imposed. This method would ordinarily yield a more prompt consideration of [a] defendant's challenge to the sentence than would the filing of a petition for habeas corpus, which usually entails considerably more delay than does a motion pursuant to [§ 43-22]." Id., 47–48 n.2. By filing a motion with the trial court, a defendant not only can be heard more expediently, but he also has access to certain remedies with regard to sentencing that the habeas court, the Appellate Court, and this court do not have the authority to order. For example, to correct an illegal sentence, only the trial court can: reconstruct the sentence to conform to its original intent or the plea agreement; eliminate a sentence previously imposed for a vacated conviction; or resentence a defendant if it is determined that the original sentence was illegal. See *Miller* v. *Commissioner of Correction*, 29 Conn. App. 773, 780–81, 617 A.2d 933 (1992); *State* v. *Raucci*, 21 Conn. App. 557, 563, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990). We therefore conclude that, in order to challenge an illegal sentence, a defendant either must appeal the sentence directly or file a motion to correct the sentence pursuant to § 43-22 with the trial court before raising a challenge for the first time in a petition for a writ of habeas corpus.

The petitioner first challenged his sentence through this habeas petition. He did not file an appeal challenging his sentence nor has he filed, pursuant to § 43-22, a motion to correct the sentence with the trial court. The petitioner could have filed such a motion "at any time," including the present time. Practice Book § 43-22. Furthermore, our review of the record reveals that the petitioner *never challenged* his sentence nor moved to withdraw his plea of nolo contendere during his first sentencing hearing or during the October 7, 1996 hearing held by the trial court. Because the petitioner has failed to follow the proper procedures by which to correct his sentence or to preserve his challenge to the

sentence before having filed this petition for a writ of habeas corpus, his petition is procedurally defaulted and, therefore, we will review the petitioner's claims before us only if he can satisfy the "cause and prejudice" standard of *Wainwright* v. *Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). See *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 132, 629 A.2d 413 (1993); *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 409, 589 A.2d 1214 (1991).

The appropriate standard for reviewability of habeas claims that were not properly raised at trial; *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 409; or on direct appeal; *Jackson* v. *Commissioner of Correction*, supra, 227 Conn. 132; because of a procedural default is the cause and prejudice standard. Under this standard, the petitioner must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition. See id.; *Johnson* v. *Commissioner of Correction*, supra, 409; see also *Simms* v. *Warden*, 230 Conn. 608, 617, 646 A.2d 126 (1994); *Summerville* v. *Warden*, 229 Conn. 397, 428, 641 A.2d 1356 (1994). "[T]he cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance . . . ." *Valeriano* v. *Bronson*, 209 Conn. 75, 83, 546 A.2d 1380 (1988). Therefore, "attorney error short of ineffective assistance of counsel does not adequately excuse compliance with our rules of [trial and] appellate procedure." *Jackson* v. *Commissioner of Correction*, supra, 135–36.

The petitioner has failed to satisfy the cause and prejudice standard for the procedural default. He did not allege in his amended petition or maintain before the habeas court that his failure to challenge his sentence before the trial court or on direct appeal had been

caused by some objective factor external to his own defense and that the default was prejudicial.[14] Id. Because we conclude that the petitioner has failed to satisfy the cause or prejudice required to overcome the procedural default, we cannot review the petitioner's claims.[15] Accordingly, we affirm the habeas court's judg-

[14] Arguably, although the petitioner fails to make this argument, the fact that this court previously has not reached the dispositive issue in this case, the uncertainty of "whether habeas corpus is an appropriate vehicle by which to challenge the legality of a sentence"; *Copeland* v. *Warden*, supra, 225 Conn. 47 n.2; could, conceivably, constitute an objective factor external to the petitioner's defense that caused him to think that he could raise this challenge for the first time before the habeas court without procedurally defaulting his claim. The petitioner, however, must establish cause and prejudice *conjunctively*. See *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 419. Because he can file a motion with the trial court to correct his sentence "at any time"; Practice Book § 43-22; the petitioner is not prejudiced by our conclusion that his claim is procedurally defaulted.

[15] In an alternative argument, the petitioner, citing *Jackson* v. *Commissioner of Correction*, 219 Conn. 215, 217, 592 A.2d 910 (1991), on appeal after remand, 227 Conn. 124, 629 A.2d 413 (1993), contends that, if we find a procedural default, we must remand this case to the habeas court for further proceedings to determine whether there was good cause for the petitioner's failure to comply with the appropriate procedures by which to correct his sentence. In *Jackson*, this court heard the petitioner on his motion for reargument or reconsideration. Id., 215. Prior to *Jackson*, this court had affirmed the habeas court's dismissal of thirty-one habeas corpus petitions, one of which was the petitioner's, in *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 403. In his motion, the petitioner in *Jackson* brought to this court's attention that, in addition to his other claims, he had presented to the habeas court testimony that would satisfy the requirement of good cause for failure to raise his claim before the trial court. *Jackson* v. *Commissioner of Correction*, supra, 219 Conn. 215-16. Because the habeas court had made no findings with respect to the testimony the petitioner had presented, we were unable to determine whether there was good cause for the procedural default. Id., 216. Accordingly, we opened the judgment affirming the dismissal of his petition and remanded the case to the habeas court for further proceedings to determine whether there was good cause for the petitioner's failure to raise the claim that was the basis for his habeas petition before the trial court. Id., 217. The petitioner in the present case is not in an analogous position to the petitioner in *Jackson*. Here, the petitioner has neither briefed nor argued before this court that he had alleged in his petition or had maintained before the habeas court that he had good cause for failing to make his claim before the trial court. Moreover, our review of the record of the proceedings before the habeas court reveals

ment dismissing the petitioner's petition for a writ of habeas corpus.

The judgment of the habeas court is affirmed.

In this opinion the other justices concurred.

that the petitioner did not present any evidence that would satisfy the good cause requirement. We therefore conclude that the petitioner's reliance on *Jackson* is misplaced.