STATE OF CONNECTICUT *v.* ERNEST FRANCIS
(AC 21381)

Foti, Schaller and Flynn, Js.

Argued January 17—officially released April 23, 2002

*Alice Osedach-Powers*, assistant public defender, for the appellant (defendant).

*Michael E. O'Hare*, assistant state's attorney, with whom, on the brief, was *James E. Thomas*, state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Ernest Francis, appeals from the order of the trial court denying his motion to correct an illegal sentence, which he filed pursuant to Practice Book § 43-22.[1] On appeal, the defendant claims that the court at sentencing improperly (1) considered his lack of veracity, (2) relied on information outside the record and (3) relied on inaccurate or mistaken information. We conclude that the trial court lacked jurisdiction to consider the defendant's motion under Practice Book § 43-22. We reverse the judgment denying the motion and remand the case with direction to dismiss the motion.

The defendant was convicted of murder and sentenced to a term of fifty years imprisonment. The judgment was affirmed in *State* v. *Francis*, 228 Conn. 118, 635 A.2d 762 (1993). On March 1, 2000, the defendant filed the motion in question and, after a hearing, the court denied the defendant's motion. The court denied the defendant's subsequent motion for reconsideration and this appeal followed.

In his motion to correct, the defendant claimed that the court denied his right to speak in mitigation of punishment,[2] relied on inaccurate information and relied on information outside the record.

The facts of the underlying offense are set forth in *State* v. *Francis*, supra, 228 Conn. 120–21,[3] and are as

[1] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[2] On appeal, the defendant states his claim as follows: "The defendant's state constitutional rights under article first, §§ 8 and 9, were violated when the trial court took into consideration when imposing sentence its belief that the defendant committed perjury while testifying."

[3] Although we normally would not recite the facts underlying the conviction in an appeal of this nature, the claims raised are somewhat dependent on those facts as reasonably could have been found by the jury.

follows: "On March 8, 1990, the defendant and the victim were incarcerated at the Hartford community correctional center. The two men became involved in an altercation during which the victim and several other inmates attacked the defendant. During the course of this altercation, the defendant was stabbed in his leg with a shank, a prison term for a homemade weapon. The defendant believed that it was the victim who had stabbed him. Both men were subsequently released from custody.

"On August 12, 1990, the defendant and the victim met again. At approximately 4 p.m. on that day, two witnesses, Jennifer Green and Sandra Brown, were on the porch of Brown's residence at 165 Homestead Avenue in Hartford. At that time, they saw a young man, later determined to be the victim, walking toward them on Homestead Avenue, holding an 'ice pop' in his hand. At the same time, two additional witnesses, Victor Lowe and Fred Faucette, were standing on the sidewalk of Homestead Avenue. They also noticed the victim.

"All four witnesses then observed a red Mitsubishi automobile drive up Homestead Avenue, pass the victim, stop suddenly, back up and halt near him. The defendant then emerged from the driver's side of the car and approached the victim. An argument ensued between the two men. This confrontation occurred twenty to forty feet from Lowe and Faucette.

"While the defendant and victim exchanged words, the four witnesses observed, from different vantage points, that the defendant held his right hand behind his back. From where they were located, both Green and Brown observed that the defendant's hand, which was behind his back, was on the handle of a knife. Upon seeing the knife, Brown commented to Green, 'He wouldn't dare do that.'

"After further words had been exchanged, the victim agreed to fight the defendant. The victim did not, however, make any physical movement toward the defendant. The defendant then pulled the knife from behind his back and began to make stabbing motions at the victim. One of these stabbing motions cut the victim's ice pop in half as the victim was retreating.

"The victim ran into a nearby yard where he was pursued by the defendant. There, the defendant stabbed the victim in the upper left portion of his chest, causing his death. The defendant then reentered the car and left the scene. He was arrested in Miami, Florida, on August 17, 1990."

At the time of sentencing, after it heard from the state's attorney and defense counsel, the court heard from the defendant after he was offered the opportunity to address the court. After hearing statements from members of the defendant's family, the court inquired of the defendant and his counsel if they wanted to make any further remarks, and they indicated that they did not want to do so. The state's attorney then addressed the court in rebuttal of the statements made, and the court thereafter permitted the defendant to respond personally to those remarks.[4]

The court noted that, before imposing a sentence, it would consider the nature of the crime, the defendant's prior criminal record, the defendant's background and the impact of the crime on the victim's family. The court reviewed the evidence presented at trial, including evidence concerning the manner in which the defendant delivered the fatal blow to the victim. The court also examined the defendant's criminal record and noted that the defendant had been on probation at the time of the murder. Thereafter the court commented: "I am

---

[4] The defendant does not argue on appeal that he was denied the right of allocution at sentencing.

not the finder of fact, but the court can consider whether or not perjury was committed in front of it. And I reviewed [the defendant's] words carefully and I can't help but infer that perjury was committed in that [the defendant testified that during the incident he] was blinded by the juice from the ice cream. And there [are] so many areas, I counted [about] nineteen . . . that strain credulity."

The court next commented on the impact that the murder had on the victim's family and spoke of the purposes of sentencing. Specifically, the court noted the deterrent effect inherent in sentencing and commented: "And I think that's important, not for [this defendant] or the [other defendants] to come, but for the young people that are on the street that see the young men like [the defendant] that appear macho, that are involved in drugs, that have cars, attractive new cars, that have jewelry, that have money, that have attractive ladies. And that's impressionable on young people. And when these people are involved in the criminal milieu, it's unfortunate that these young, impressionable people don't see where they end up. Because only if these cases, I think every week or every month, the more serious cases and violent cases of conviction, the pictures and articles should be put in the paper in a special section for all to see. Otherwise, to say there's deterrence is illusory."

The court also concluded that it possessed little, if any, belief, given the defendant's criminal history, that he could rehabilitate himself. At that point, the defendant asked to be heard again. The court denied his request and continued to deliver its sentencing remarks without further interruption and, ultimately, imposed its sentence.

I

The defendant first claims that during its sentencing deliberations, the court violated his state constitutional

rights when it considered his testimony at trial as perjurious. We disagree.

The defendant failed either to object to the court's remarks at the time they were made or to raise his claim as part of his appeal to our Supreme Court. Further, the defendant did not raise either this claim or a claim arising under the state constitution, nor did he address "perjury," "veracity" or "lack of veracity" in his motion to correct.[5] Accordingly, the court did not address those claims. The defendant argues that the motion was broad enough to preserve sufficiently his claim on appeal. Nevertheless, he argues that even if we conclude to the contrary, we should review the claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The state argues that the claim is unpreserved and not reviewable under *Golding*. The state also argues, in regard to the issue of the court's consideration of the defendant's veracity, that the defendant cannot demonstrate that the protection afforded him by the due process clauses of the state constitution exceeds that afforded him under the federal due process clause.[6]

As a preliminary matter, however, we must resolve a jurisdictional question raised by the state. The state asks whether a motion to correct an illegal sentence brought pursuant to Practice Book § 43-22 may be entertained where the validity of the sentence itself is not in dispute and the execution of the sentence has begun.

A trial court has jurisdiction to correct a sentence pursuant to Practice Book § 43-22, which provides that "[t]he judicial authority may at any time correct an

---

[5] The defendant raises for the first time on appeal article first, §§ 8 and 9, of the constitution of Connecticut.

[6] Our Supreme Court has held that considering a defendant's untruthful testimony or "lack of veracity" at trial in determining the appropriate sentence after conviction does not violate federal due process rights. See *State* v. *Coleman*, 242 Conn. 523, 543–44 n.23, 700 A.2d 14 (1997); *State* v. *Huey*, 199 Conn. 121, 129, 505 A.2d 1242 (1986).

illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." See *State* v. *Cator*, 256 Conn. 785, 803–804, 781 A.2d 285 (2001). "[T]he jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . . Practice Book § 43-22 . . . provides the trial court with such authority . . . . An 'illegal sentence' is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory." (Citations omitted; internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37–38, 779 A.2d 80 (2001).

A sentence imposed within statutory limits is generally not subject to review. *State* v. *McNellis*, 15 Conn. App. 416, 445, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). The sentence imposed in the present case was not illegal; it was facially valid, did not exceed the maximum statutory limits, did not violate a mandatory minimum, did not violate double jeopardy rights and was neither ambiguous nor internally contradictory. See *State* v. *Mollo*, 63 Conn. App. 487, 491, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001). The defendant's claim does not attack the validity of the sentence. "Practice Book § 43-22 is limited by the common-law rule that a trial court may not modify a sentence if the sentence was valid and execution of it has begun." *State* v. *Mollo*, supra, 492. The court lacked jurisdiction to consider the defendant's claim under Practice Book § 43-22 and therefore should have dismissed the defendant's motion.

## II

The defendant also claims that when determining his sentence, the court improperly relied on information

outside the record and that it relied on inaccurate information.[7] Neither of those claims goes to the "legality" of the sentence as discussed in part I. Accordingly, we conclude that the court lacked jurisdiction to consider those claims under Practice Book § 43-22.

The form of the judgment is improper, the order denying the motion is reversed and the case is remanded with direction to dismiss the motion.

In this opinion the other judges concurred.

---

[7] Specifically, the defendant claims that the court improperly considered information outside of the record by basing its sentence on the erroneous belief that he was involved with drugs, possessed attractive new cars, possessed jewelry and money, and kept the company of attractive women. He also claims that the court improperly relied on inaccurate information as to the manner in which he committed the crime. He claims, in that regard, that the evidence clearly demonstrated that he did not inflict two knife wounds on the victim, as the court suggested.