JUDSON BROWN *v.* COMMISSIONER OF
CORRECTION
(AC 24714)

Flynn, DiPentima and Harper, Js.

Argued September 13—officially released November 22, 2005

*Sheila A. Huddleston*, special public defender, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, J. The petitioner, Judson Brown, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The court granted his petition for certification to appeal. On appeal, the petitioner claims that the court improperly concluded that he was not deprived of the effective assistance of counsel because of the alleged failure of his public defenders to ensure that he received his file promptly following their withdrawal from his criminal case.[1] We affirm the judgment of the habeas court.

---

[1] The respondent, the commissioner of correction, raises procedural default as an alternate ground for affirmance, arguing that the petitioner's claim is not among those types of ineffective assistance of counsel claims that our Supreme Court considered best brought in a habeas procceding. See *State* v. *Leecan*, 198 Conn. 517, 541–42, 504 A.2d 480 (holding that all ineffective assistance of trial counsel claims could be reviewed in habeas corpus proceedings), cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed.

Prior to discussing the factual and procedural history relevant to our disposition of the petitioner's appeal, we set forth the standard by which we review the habeas court's findings of fact. "The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a defendant received . . . was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–53, 662 A.2d 718 (1995).

Although we conduct a plenary review of the record, to prevail on his claim of ineffective assistance of counsel, the petitioner "must show that counsel's assistance was so defective as to require reversal of [the] conviction." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 798, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004). As the United States Supreme Court stated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), proof of ineffective assistance of counsel requires a showing by the petitioner in two parts: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. In order to prove that counsel was deficient, however, it is not enough for the petitioner to claim that counsel

2d 550 (1986). In light of our decision on the merits of the petitioner's appeal, we decline to reach that issue.

made mistakes or to argue that counsel should have pursued another tactic. Rather, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.

Our focus in the present case is on the first prong of the *Strickland* test.[2] To meet that prong, "the petitioner must first establish that his attorney's performance was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law . . . . The court must be mindful that [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Citation omitted; internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 855–56, 877 A.2d 11, cert. denied, 275 Conn. 905, 882 A.2d 672 (2005).

With that standard of review in mind, we now consider the following facts and procedural history. In

[2] In his habeas petition, the petitioner claimed, as a separate count, that his public defenders provided ineffective assistance of counsel by having an investigator from their office deliver his file to him while a witness was on the witness stand, thereby precluding the investigator from testifying at trial without violating the court's sequestration order. In his posttrial brief and on appeal, the petitioner abandons that claim as a separate instance of ineffective assistance of counsel and instead argues that it exemplifies how he was prejudiced by the public defenders' failure to provide him with his file in a timely fashion. Because we conclude that the public defenders' actions did not constitute ineffective assistance of counsel, we do not consider whether the petitioner suffered any prejudice due to the court's precluding him from presenting as a witness the investigator who delivered the file.

October, 1996, the petitioner was arrested and charged in connection with an arson committed that August.[3] He initially claimed indigence and requested a public defender. Two public defenders filed appearances on behalf of the petitioner, one in December, 1996, and the second, which was in addition to the first, in October, 1998. On November 12, 1998, the state filed a motion for judicial determination of eligibility for public defender services. The following day, in response to the state's motion and on the basis of information discovered in conjunction with their preparation to defend the petitioner against incidents of uncharged misconduct the state sought to introduce at trial, the public defenders filed a motion to withdraw, having determined that the petitioner no longer qualified for public defender services.[4] Although jury selection was scheduled to begin at about the time those motions were filed, the petitioner's public defenders represented that they believed that in the event their motion to withdraw was granted, the court would grant the petitioner a continuance so as to allow him to retain private counsel.[5] On November 16, 1998, the court granted the motion to withdraw. The petitioner did not challenge that ruling and, on December 11, 1998, filed a pro se appearance. The petitioner's criminal trial began in May, 1999.

---

[3] For the underlying factual history of the crimes for which the petitioner was convicted, see *State* v. *Brown*, 256 Conn. 291, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001).

[4] The petitioner's public defenders filed their motion to withdraw pursuant to General Statutes § 51-297 (c), which provides in relevant part: "If a public defender . . . is appointed to provide assistance to any person and he subsequently determines that the person is ineligible for assistance, the public defender . . . shall promptly inform the person in writing and make a motion to withdraw his appearance . . . as soon as it is practical to do so without prejudice to the case, giving the defendant a reasonable time to secure private counsel. . . ."

[5] We note that, in fact, such a continuance was granted; the petitioner's trial did not begin for another six months.

The petitioner did not obtain his file from his public defenders prior to the commencement of trial. At the habeas trial, the petitioner testified that he had requested his file on numerous occasions, both orally and in writing, from his public defenders. The petitioner, however, was unable to produce any evidence of his requests, and the habeas court found more credible the testimony of one of his public defenders, who testified that no direct request had been made.[6] The public defender testified that she had told the petitioner that his file was available and that, if he had private counsel, the file was in the public defender's office and the attorney could obtain the file. She further testified that the petitioner never requested his file from the public defenders, even after he had filed his pro se appearance.

On May 17, 1999, when the court was handling a variety of pretrial matters in the petitioner's case, the issue of the petitioner's witness list arose. The petitioner represented to the court that he did not have a complete list of potential witnesses because his public defenders had compiled that list during their representation of him and he had not obtained that list since the time of their withdrawal. On the following day, the petitioner represented to the court that the public defender's office was preparing to relinquish his file to him and that he expected to obtain his file that afternoon. He actually obtained the majority of his file at

---

[6] The petitioner does not challenge the court's findings on that point and concedes, in fact, that the court was entitled to make determinations regarding credibility. That is true even when, as here, our review is plenary. "This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 66 Conn. App. 850, 851, 785 A.2d 1225 (2001).

about that time, with several enlarged photographs being delivered during the trial itself.[7]

In order to assess the petitioner's claim, it is necessary to understand what the petitioner is not claiming. The petitioner is not claiming that his counsel's performance was deficient because they withdrew from his case, and he is not claiming that counsel's performance was deficient because they failed to release his file to him upon his request. Rather, the petitioner's sole claim is that his counsel's performance was deficient because they failed to tell him explicitly that he could obtain his file in the event that he did not hire private counsel. In making his claim, the petitioner relies on the testimony of the public defender who stated that she had told the petitioner that when he obtained the services of private counsel, that counsel could obtain his file. Although that witness also testified that she would have given the petitioner his file had he asked for it, the petitioner claims that in order for counsel's representation of him to be effective, they were required to tell him that he could obtain his file in the event that he proceeded pro se. Although, like the habeas court, we find it troubling that the petitioner did not have possession of his file prior to the commencement of trial, we decline to hold that his counsel's performance was deficient by their inaction following their withdrawal.[8] The petitioner's public defenders acted in accordance

[7] It is unclear how many documents included in the petitioner's file previously were not in his possession prior to his criminal trial. The petitioner's public defender testified that she customarily gives copies of documents, such as police reports, witness statements and documents received from the state, to her clients. Additionally, prior to the public defender's office becoming involved in his case, the petitioner hired a private investigator who interviewed the state's key witness.

[8] We emphasize that our decision is limited to those facts presented by the petitioner and found credible by the habeas court. We do not consider whether the result would be the same had the petitioner actually and repeatedly requested his file from his public defenders without success.

with statutory law when they withdrew their representation. See General Statutes § 51-297 (c). They reasonably believed, given the complexity of the petitioner's case and his previous hiring of an independent investigator, that the petitioner would hire private counsel. Under the facts of this case, we conclude that the representation provided by the petitioner's public defenders fell within the wide range of reasonable professional assistance generally provided by lawyers with ordinary skill and training in the criminal law. See *Lewis* v. *Commissioner of Correction,* supra, 89 Conn. App. 855. The petitioner must bear some of the responsibility for his *own* inaction in not requesting his file even once following his counsel's withdrawal.

The judgment is affirmed.

In this opinion the other judges concurred.