# STATE OF CONNECTICUT *v.* ELLIS DIXSON
## (AC 25570)

# ELLIS DIXSON *v.* COMMISSIONER OF CORRECTION
## (AC 25651)

Dranginis, DiPentima and Peters, Js.

Argued October 26, 2005—officially released January 17, 2006

*James B. Streeto*, assistant public defender, with whom, on the brief, was *Sandra J. Crowell*, assistant public defender, for the appellant (defendant in the first case, petitioner in the second case).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Elizabeth Bodine*, former assistant state's attorney, for the appellees (state in the first case, respondent in the second case).

Opinion

DiPENTIMA, J. In these consolidated appeals, the petitioner, Ellis Dixson,[1] in AC 25570 challenges the

---

[1] Dixson was the defendant in the proceedings in which he filed his motion to correct an illegal sentence and the petitioner in the habeas corpus proceedings. For clarity, however, we will refer to him as the petitioner throughout this opinion.

judgment of the trial court denying his motion to correct an illegal sentence and in AC 25651 challenges the judgment of the habeas court denying his petition for a writ of habeas corpus. The habeas court also denied the petitioner's petition for certification to appeal. The petitioner claims that in rendering judgment denying his motion to correct his sentence, the trial court abused its discretion by (1) not crediting his testimony that in separate proceedings before the trial court, which were held prior to his plea canvass, the state had agreed to credit him with all presentence jail credit he allegedly earned prior to commencing his sentence and (2) not considering reasonable his understanding that his sentence was to commence retroactive to April 9, 1992, the date he was sentenced for two other crimes unrelated to those at issue in these appeals.[2] With respect to the habeas court's denial of his petition for certification to appeal from the denial of his petition for a writ of habeas corpus, the petitioner claims that the habeas court abused its discretion by rejecting his claim that his attorney provided him with ineffective assistance at sentencing despite the attorney's alleged failure to ensure that the sentence was made effective retroactively to April 9, 1992, so that its date of commencement would coincide with the date he began serving the sentence on the two unrelated crimes to which the 1992 sentence was to run concurrently.[3] We disagree and, accordingly, affirm the judgment of the trial court and dismiss the habeas appeal.

The following facts and procedural history inform our disposition of the petitioner's appeals. In connec-

---

[2] The petitioner also brought an equal protection challenge to his sentence, which he since has abandoned on appeal.

[3] In his petition for a writ of habeas corpus, the petitioner also raised the same claims that were addressed in his motion to correct the sentence. He conceded at the hearing on the petition that those claims, having been litigated fully in the trial court, were barred under the doctrine of res judicata from reconsideration in the habeas court.

tion with an incident occurring on or around April 13, 1990, the petitioner was arrested and charged with sexual assault in the first degree in violation of General Statutes § 53a-70. In connection with another incident, unrelated to the first, occurring on or around June 25, 1991, the petitioner was arrested and charged with sexual assault in a spousal relationship in violation of General Statutes § 53a-70b (1990 and 1991 incidents). The petitioner pleaded guilty to both charges and was sentenced on April 9, 1992. On January 28, 1992, following his plea on those two charges, but prior to sentencing, the petitioner was arrested and charged with, inter alia, kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (a), sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and assault in the second degree in violation of General Statutes § 53a-60 (a) (2) in connection with an incident occurring on or about January 27 and 28, 1992 (1992 incident).[4] He was incarcerated prior to trial on those charges from January 29 to April 9, 1992, at which time he pleaded guilty and was sentenced for the 1990 and 1991 incidents. On the basis of the pleas for the 1990 and 1991 incidents, the petitioner was sentenced to ten years imprisonment, suspended after three and one-half years, with five years probation on the charge of sexual assault in a spousal relationship and three years and two months imprisonment on the charge of sexual assault in the first degree. Because the sentences were to run concurrently, the petitioner's total effective sentence was three and one-half years imprisonment. On the charges arising from the 1992 incident, the petitioner entered a plea of not guilty and elected a jury trial. Approximately one year and seven months later, however, on September 23, 1993, on the day that trial

---

[4] The defendant also was charged with one other count each of sexual assault in the first degree and assault in the second degree, and with two counts of attempt to commit assault in the first degree. Those charges later were nolled.

was to commence, the petitioner chose to plead guilty to the 1992 charges under the *Alford* doctrine[5] in accordance with a plea bargain of twenty-one years incarceration, with a right to argue for less, that would be concurrent with the sentence he then was serving for the 1990 and 1991 incidents. On November 12, 1993, the court sentenced the petitioner for the 1992 incident to twenty years imprisonment on each of the first two counts and five years imprisonment on one of two counts that alleged assault in the second degree, with the sentences to run concurrently with each other for a total effective sentence of twenty years. The sentencing court indicated that the twenty year sentence was to run concurrently with any sentences the petitioner then was serving.

On November 14, 2002, the petitioner filed a petition for a writ of habeas corpus, and on September 16, 2003, he filed a motion to correct his sentence. Both filings attacked the validity of the sentence he received as a result of his pleas to the charges arising from the 1992 incident. Specifically, the petitioner claimed that he wrongfully had been denied presentence confinement credit he claimed to have accrued on the sentence from April, 1992, through November, 1993—the span of time between the date on which he was sentenced for the 1990 and 1991 incidents and the date on which he was sentenced for the 1992 incident.

In his motion to correct the sentence for the 1992 incident, the petitioner claimed that the state had breached its plea agreement with him by not crediting him for the time he had spent incarcerated as a sentenced prisoner. He claimed, in the first instance, that he was told he would "receive credit for all the time he had already served." Additionally, he claimed that

---

[5] See *North Carolina* v. *Alford*, 400 U.S. 25, 35, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

because the state was not crediting his sentence with the time he spent in jail from April, 1992, when he was a sentenced prisoner, to November, 1993, that portion of his sentence was served consecutively rather than concurrently and, therefore, either was not in accordance with the sentence imposed by the court for the 1992 incident or was not in accordance with his reasonable understanding of the plea agreement into which he entered with the state.

In his petition for a writ of habeas corpus, the petitioner claimed that he had received ineffective assistance of counsel at sentencing because his attorney failed to ask the court to order that on the twenty year sentence for the 1992 incident, credit be given for the time spent incarcerated between April, 1992, and November, 1993. The petitioner also claimed that the advice he received from his attorney regarding credit for that time period constituted ineffective assistance of counsel because the advice fell below the standard of performance expected of reasonably competent defense attorneys. Separate hearings were held on the motion to correct the sentence, and the petition for a writ of habeas corpus. The trial court denied the petitioner's motion to correct the sentence, and the habeas court denied the petition for a writ of habeas corpus and thereafter denied the petition for certification to appeal. These consolidated appeals followed.

## I

We first address the petitioner's claim that the trial court improperly denied his motion to correct the sentence.[6] We will reverse the court's denial of the petition-

[6] The petitioner's claim that his sentence is illegal is brought pursuant to Practice Book § 43-22, which authorizes the court to consider sentences that are illegal or that were imposed in an illegal manner. This court recently noted that although that provision authorizes a court to consider a defendant's claim that his sentence was imposed in an illegal manner, it does not imbue the court with the jurisdiction to consider such a claim. *State* v. *Lawrence*, 91 Conn. App. 765, 773, 882 A.2d 689 (2005). Rather, the jurisdic-

er's motion to correct the sentence only on a showing that the court abused its discretion. *State* v. *Pagan*, 75 Conn. App. 423, 429, 816 A.2d 635, cert. denied, 265 Conn. 901, 829 A.2d 420 (2003); see also *State* v. *Henderson*, 8 Conn. App. 342, 344–45, 512 A.2d 974, cert. denied, 201 Conn. 813, 517 A.2d 631 (1986), cert. denied, 479 U.S. 1092, 107 S. Ct. 1304, 94 L. Ed. 2d 159 (1987). Furthermore, in reviewing the petitioner's claims, we do not question credibility determinations reached by the court, for the trial court "is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Brown* v. *Commissioner of Correction*, 92 Conn. App. 382, 387 n.6, 885 A.2d 761 (2005). Additionally, the petitioner can prevail in his challenge to the trial court's factual findings only if those findings are clearly erroneous. See *In re Eden F.*, 250 Conn. 674, 705, 741 A.2d 873 (1999).

The petitioner claims that his sentence was imposed in an illegal manner because the sentence is not in

tion to consider such a claim must come from common law, statutory law or constitutional law. Id., 772–74. There currently is a split of authority from this court as to whether such jurisdiction exists. Compare *State* v. *Pagan*, 75 Conn. App. 423, 816 A.2d 635, cert. denied, 265 Conn. 901, 829 A.2d 420 (2003), with *State* v. *Francis*, 69 Conn. App. 378, 793 A.2d 1224, cert. denied, 260 Conn. 935, 802 A.2d 88, cert. denied, 537 U.S. 1056, 123 S. Ct. 630, 154 L. Ed. 2d 536 (2002). Neither party raised the jurisdictional issue on appeal, and we decline to consider the issue in full. We merely recognize that regardless of the answer to the wider question of whether the court has jurisdiction to consider all claims of sentences imposed in an illegal manner, our Supreme Court has decided implicitly that the court has jurisdiction to decide the question presented here: Whether a sentence was imposed in an illegal manner because the government breached its plea agreement with the defendant. See *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 31–32, 779 A.2d 80 (2001) (petitioner who claimed habeas court improperly concluded sentence imposed lawfully and in compliance with plea agreement between petitioner and state brought petition prematurely because he had not challenged sentence in direct appeal or filed motion in trial court pursuant to Practice Book § 43-22).

accordance with the plea agreement he reached with the state. Specifically, the petitioner claims that he had been told that he would not lose any jail credit he had earned on his sentence and that his sentence would not exceed twenty-one years imprisonment. Additionally, the petitioner claims that he reasonably believed that his sentence for the 1992 incident, because it was to run concurrently with the sentence he already was serving for the 1990 and 1991 incidents, would begin to run on April 9, 1992, the date he was sentenced for the 1990 and 1991 incidents. His claim, in essence, is that his sentence for the 1992 incident retroactively accrued time from when he was a sentenced prisoner.[7] On appeal, the petitioner challenges the accuracy of the trial court's factual finding that the state did not agree to credit him with the time he had served as a sentenced prisoner and the court's ultimate conclusion that the sentence for the 1992 incident, both in the manner that it was imposed and the method by which it was calculated, comported with the plea agreement into which he and the state had entered. We are not persuaded.

The following additional facts are necessary to our resolution of the petitioner's claim that the court improperly denied his motion to correct the sentence. During the hearing on his motion, the petitioner testified that a separate and distinct proceeding had occurred prior to the hearing at which he pleaded guilty to the charges arising from the 1992 incident. The petitioner testified that at that hearing, his counsel sought and obtained reassurance from the state and the court that

---

[7] The petitioner concedes that as a matter of law, his sentence for the 1992 incident, which was to run concurrently with the sentence he then was serving for the 1990 and 1991 incidents, could not date back to April 9, 1992, when he was sentenced for the 1990 and 1991 incidents. See *Oliphant v. Commissioner of Correction*, 274 Conn. 563, 574–75, 877 A.2d 761 (2005). His claim, therefore, is based only on his reasonable understanding of the agreement he entered into with the state.

the petitioner would receive all accrued jail credit for purposes of shortening the sentence imposed as a result of the plea to the charges arising from the 1992 incident. The petitioner was unable to identify the judge before whom that hearing allegedly took place, and counsel could not locate or produce any transcripts or other evidence of that hearing. Notably, the petitioner did not call his trial counsel as a witness to corroborate his testimony, and when the state called the prosecutor who had been involved in arranging the petitioner's plea, the prosecutor testified that he had no recollection of a separate hearing taking place before the petitioner entered the plea. Additionally, no mention of a prior proceeding was made during the petitioner's plea canvass, and the petitioner did not mention at the plea canvass that the promise of jail credit was part of his plea agreement with the state.

The trial court found that the petitioner had "failed to demonstrate that there existed a 'prior proceeding' where certain promises were made to [him]." In reaching that conclusion, the court relied heavily on the plea canvass in which the petitioner responded in the negative when asked whether any other promises had been made to him to induce his plea. On the basis of those facts and the record as a whole, we conclude that the court's determination that a prior proceeding had not taken place during which the petitioner had been promised that he would not lose any jail time that he had accrued as a sentenced prisoner was not clearly erroneous.

Our analysis, however, does not end with our upholding the court's factual findings regarding the existence of a prior proceeding during which the state promised the petitioner that he would not lose any jail time. The petitioner also claims that he had a reasonable belief that he would be credited with the jail time he had served as a sentenced prisoner because the court stated

that his sentence for the 1992 incident was to run concurrently to the sentence he then was serving for the 1990 and 1991 incidents, and his understanding of the word "concurrent" was that his sentence for the 1992 incident would run retroactively from April 9, 1992, the date on which he was sentenced for the 1990 and 1991 incidents.

The petitioner argues, and we agree, that although "plea agreements are subject to ordinary contract law principles . . . any ambiguity [in the agreement] is [to be] resolved strictly against the Government." (Internal quotation marks omitted.) *United States* v. *Cimino*, 381 F.3d 124, 127 (2d Cir. 2004). Additionally, the reasonable expectations of the petitioner, when entering into a plea, are of great import because of the significance of the constitutional rights that are forfeited when choosing to plead guilty. *State* v. *Nelson*, 23 Conn. App. 215, 219, 579 A.2d 1104, cert. denied, 216 Conn. 826, 582 A.2d 205 (1990), cert. denied, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991). The ultimate goal, however, in construing any plea agreement when there is a dispute as to its terms is "the real intent of the parties . . . ." (Internal quotation marks omitted.) Id.

The trial court, in concluding that the parties intended the petitioner's sentence for the 1992 incident to commence on the November 12, 1993 sentencing date, again relied heavily on the plea canvass. Specifically, the trial court found it significant that neither the petitioner nor his counsel requested that the sentencing court make it clear that the time the petitioner had spent as a sentenced prisoner was to be credited toward the sentence for the 1992 incident. We also find it significant that when the petitioner entered his plea on September 23, 1993, his counsel clarified for the record that the court had indicated that the sentence was "a total effective sentence on all three counts." In requesting that clarification from the court, however, counsel did not seek

to include the sentence for the 1990 and 1991 incidents that the petitioner then was serving as part of that "total effective sentence . . . ." The clarification sought by the petitioner's counsel at the time the petitioner entered the plea is a strong indication of what the petitioner reasonably believed to be his agreement with the state.[8] Because the record indicates that the petitioner received what he bargained for when entering into his plea agreement with the state, we conclude that the trial court did not abuse its discretion in denying the petitioner's motion to correct the sentence.

## II

The petitioner also claims that the habeas court should have granted his petition for certification to appeal because trial counsel provided ineffective assistance by not requesting, on the record at sentencing, that in the sentence for the 1992 incident, credit be given for the time the petitioner was incarcerated as a sentenced prisoner from April, 1992, through November, 1993.[9] Additionally, the petitioner claims that counsel's performance was deficient because counsel did not give a sufficient explanation of jail credit. We disagree.

---

[8] We also note that our Supreme Court recently considered and rejected the definition of "concurrent" espoused by the petitioner. See *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 572–75, 877 A.2d 761 (2005). In doing so, the court recognized that such an interpretation would permit the petitioner to be received into custody before the sentence existed and, taken to its logical conclusion, in some circumstances, before the crime even had been committed. Id., 575. The court's description of that result as "bizarre"; id.; heavily suggests that such an interpretation would not be reasonable.

[9] We recognize that there is some incongruity between the petitioner's testimony that a prior proceeding took place during which the state promised him that he would not lose any jail credit as part of the plea agreement and his argument that his counsel was ineffective for not requesting on the record that the petitioner be credited with the jail time he served as a sentenced prisoner. That incongruity, however, merely gives weight to the credibility determinations made by the trial and habeas courts regarding the petitioner's testimony and has no effect on our decision as to the petitioner's appeal.

The following additional facts are necessary to our resolution of the petitioner's claim. At the hearing on his petition for a writ of habeas corpus, the petitioner submitted into evidence the transcript of the proceedings before the trial court on the motion to correct his sentence. Additionally, the petitioner presented testimony from Edward R. Narus, the prosecutor with whom he had reached the plea agreement, to the effect that (1) the petitioner's trial counsel did not make any request for jail credit on the record, (2) such a request is "the exception to the rule" and (3) in Narus' role as prosecutor, he sometimes has objected to such a request and sometimes has not objected. On cross-examination, however, Narus clarified that his understanding of "jail credit" was presentence jail credit and that someone serving time as a sentenced prisoner is not entitled to any credit for that time on the sentence in another case. The petitioner also relied on the testimony of Richard S. Cramer, his trial counsel. Under cross-examination by the petitioner's habeas counsel, Cramer testified that, in hindsight and considering that the petitioner had paid an additional penalty of one year and seven months by waiting until the day of trial to plead guilty to the charges arising from the 1992 incident, it would have been reasonable to have made the argument to the sentencing judge that the petitioner should receive credit for some of that time. The respondent, the commissioner of correction, also presented testimony from Michelle Deveau, a records specialist with the department of correction, who testified that as soon as the petitioner became a sentenced inmate, he ceased to accrue credit on any future sentence for the charges arising from the 1992 incident. On cross-examination, Deveau testified that the petitioner could have received additional credit if it had been ordered on the judgment mittimus and that such an order is made in approximately one out of every thirty or forty cases.

The habeas court found that there was no plea bargain in place that would have allowed the petitioner to receive any jail credit for the time he was a sentenced prisoner. In making that finding, the habeas court, like the trial court before it, relied heavily on the plea canvass during which the petitioner responded in the negative when asked whether there were any other promises made to him by the state in order to induce his plea. Specifically, as to the claim that counsel rendered ineffective assistance because he did not request credit for the time the petitioner had spent in jail as a sentenced prisoner, the habeas court concluded that, purely on the basis of the statistics involved, as testified about by Narus and Deveau, it is not the norm for an attorney to make such a request of the sentencing court and the failure to do so, therefore, did not constitute ineffective assistance of counsel. On the basis of those determinations, the habeas court denied the petition for a writ of habeas corpus. Thereafter, the court denied the petition for certification to appeal, concluding that the petition was without merit.[10]

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

---

[10] The court denied the petition for certification to appeal on the grounds both that it was untimely and that it was without merit. The petitioner argued and the respondent conceded that the petition was timely. That the court improperly denied the petitioner as untimely, however, does not affect the conclusion that the petition was without merit.

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"We examine the petitioner's underlying claim of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . .

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferen-

tial. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 423–25, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005).

As previously indicated, to the extent that the habeas court's findings of fact rest on credibility determinations, we will not disturb those findings. See *Brown* v. *Commissioner of Correction*, supra, 92 Conn. App. 387 n.6. Here, the habeas court clearly found not credible the petitioner's testimony that there existed a prior proceeding during which the state promised him that he would receive credit for the jail time served as a sentenced prisoner. The only claim of ineffective assistance of counsel asserted by the petitioner was that counsel's performance was deficient because counsel failed to make the unusual request that the petitioner be credited with that jail time. Although the actions of

other counsel are not the touchstone of what constitutes effective assistance of counsel in this case, they are a strong indicator of what constituted the exercise of reasonable professional assistance at the time that assistance was rendered. To that extent, it is only marginally relevant that the petitioner's trial counsel might have taken different action when endowed with the benefit of hindsight. See *Yarborough* v. *Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) ("Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight").[11]

Our review of the petitioner's claim of ineffective assistance of counsel leads us to conclude that he has not demonstrated that the issue is debatable among jurists of reason, that a court could resolve the issue differently or that the issue deserves encouragement to proceed further. We therefore conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The judgment in AC 25570 is affirmed and the appeal in AC 25651 is dismissed.

In this opinion the other judges concurred.

---

[11] The per curiam opinion in *Yarborough* included the following: "To recall the words of Justice (and former Solicitor General) Jackson: 'I made three arguments of every case. First came the one that I planned—as I thought, logical, coherent, complete. Second was the one actually presented—interrupted, incoherent, disjointed, disappointing. The third was the utterly devastating argument that I thought of after going to bed that night.' " *Yarborough* v. *Gentry*, supra, 540 U.S. 8.