**CASES ARGUED AND DETERMINED**

IN THE

# SUPREME COURT

OF THE

# STATE OF CONNECTICUT

———————

## JUDSON BROWN v. COMMISSIONER
## OF CORRECTION
## (SC 20474)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to the rules of practice (§ 23-24), once a petition for a writ of
habeas corpus is filed in the Superior Court, "[t]he judicial authority
shall promptly review [the] petition . . . to determine whether the writ
should issue. The judicial authority shall issue the writ unless it appears
that . . . the court lacks jurisdiction . . . the petition is wholly frivo-
lous on its face . . . or . . . the relief sought is not available," and
"[t]he judicial authority shall notify the petitioner if it declines to issue
the writ pursuant to this rule."

Pursuant further to the rules of practice (§ 23-29 (3)), "[t]he judicial authority
may, at any time, upon its own motion . . . dismiss the petition, or any
count thereof, if it determines that . . . the petition presents the same
ground as a prior petition previously denied and fails to state new facts
or to proffer new evidence not reasonably available at the time of the
prior petition . . . ."

The petitioner, who had been convicted of arson in the first degree and
conspiracy to commit arson in the first degree, filed a successive habeas
petition, claiming that he was not canvassed properly about his right
to appeal when the public defender assigned to represent him withdrew
from representation before the start of the defendant's criminal trial.
The habeas court, acting on its own motion and without notifying the
parties, dismissed the petition as repetitious pursuant to Practice Book
§ 23-29 (3). Thereafter, the petitioner filed a petition for certification to

1

Brown *v.* Commissioner of Correction

appeal, which the habeas court denied, and the petitioner appealed to the Appellate Court, which summarily dismissed the petitioner's appeal. On the granting of certification, the petitioner appealed to this court, claiming that the habeas court improperly had dismissed his petition pursuant to § 23-29 without providing him with prior notice and an opportunity to be heard.

*Held* that, prior to dismissing a habeas petition on its own motion under Practice Book § 23-29, a habeas court is required to provide the petitioner with notice of the court's intention to dismiss the petition, and the petitioner has the right to be heard on the papers, either by way of a brief or a written response, the habeas court thus improperly dismissed the petitioner's habeas petition pursuant to § 23-29 (3) without providing the petitioner with prior notice and an opportunity to submit a brief or a written response, and, accordingly, this court reversed the Appellate Court's judgment dismissing the petitioner's appeal and remanded the case for further proceedings:

Because Practice Book § 23-29 was ambiguous with respect to whether a habeas court is required, once it issues the writ after applying the criteria set forth in Practice Book § 23-24, to provide notice and an opportunity to be heard before dismissing a petition pursuant to § 23-29 on its own motion, this court reviewed the historical development of those rules, including the wholesale revision of the provisions governing habeas proceedings (§ 23-21 et seq.) by the Rules Committee of the Superior Court and a predecessor rule that previously had expressly authorized habeas courts to dismiss repetitive petitions without a hearing, as well as the differences and interplay between §§ 23-29 and 23-24, the latter of which acts as a gatekeeping mechanism and requires the court only to provide notice after it has declined to issue the writ, and these considerations led this court to conclude that the Rules Committee intended that dismissal under § 23-29 requires additional procedural safeguards beyond those that are required for a decision not to issue the writ under § 23-24.

Although those additional safeguards required, at the least, prior notice to the petitioner or the petitioner's counsel and the opportunity to file a written response, it would be overly burdensome and inefficient to require the habeas court to conduct a full hearing on every petition that survives the court's initial review under Practice Book § 23-24, especially in light of the public policy underlying the legislature's comprehensive habeas reform in 2012, which was intended to improve and expedite the habeas process by efficiently disposing of frivolous petitions.

This interpretation was consistent with the intent of the Rules Committee in revising the rules, drew a proper balance between the competing interests of affording petitioners due process and the need for expeditious resolution of habeas petitions in an effort to reach the meritorious cases, and permitted habeas courts to conduct full hearings when they deem them appropriate.

345 Conn. 1 OCTOBER, 2022 3

Brown *v.* Commissioner of Correction

Insofar as the habeas court in the present case did not have the opportunity to first determine whether any grounds existed for it to decline to issue the writ pursuant to Practice Book § 23-24, the case was remanded to the habeas court to first make that determination; if it opts to issue the writ and again elects to exercise its discretion to dismiss the petition on its own motion pursuant to Practice Book § 23-29, it must provide the petitioner with prior notice and an opportunity to file a brief or a written response addressing the proposed basis for dismissal pursuant to § 23-29.

(*One justice concurring separately*)

Argued September 15, 2021—officially released October 4, 2022

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson*, *J.*, rendered judgment dismissing the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to the Appellate Court, *Elgo*, *Moll* and *Bishop*, *Js.*, which dismissed the appeal, and the petitioner, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Michael W. Brown*, for the appellant (petitioner).

*Laurie N. Feldman*, deputy assistant state's attorney, with whom, on the brief, was *Patrick J. Griffin*, chief state's attorney, for the appellee (respondent).

*Opinion*

KAHN, J. This appeal requires us to consider the proper procedure that a habeas court is required to follow before dismissing a petition for a writ of habeas corpus, on its own motion, under Practice Book § 23-29. This court previously reviewed the interplay between § 23-29 and Practice Book § 23-24, and established that § 23-24 allows a habeas court to review and dismiss clearly defective petitions by sending notice to the parties after it declines to issue the writ. See *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 561, 223

Brown *v.* Commissioner of Correction

A.3d 368 (2020). In *Gilchrist*, we did not address the issue we confront today: whether § 23-29 allows a habeas court to dismiss a petition, on its own motion, without prior notice and an opportunity to be heard. The petitioner, Judson Brown, argues that a dismissal under that section entitles him to prior notice and a hearing. The respondent, the Commissioner of Correction, argues that, as with § 23-24, no prior notice or an opportunity to be heard is required. This issue, to our knowledge, has not been taken up by the Rules Committee of the Superior Court, even after this court's decision in *Gilchrist*. As in *Gilchrist*, our task in the present case is merely to ascertain the meaning of our rules of practice.[1] After reviewing the language of §§ 23-24 and 23-29, and their relationship to the provisions generally governing habeas corpus proceedings; see Practice Book § 23-21 et seq.; the historical development of the writ of habeas corpus and the public policy underlying the legislature's comprehensive habeas reform; see Public Acts 2012, No. 12-115, § 1 (P.A. 12-115); we conclude that § 23-29 requires the habeas court to provide prior notice of the court's intention to dismiss, on its own motion, a petition that it deems legally deficient and an opportunity to be heard on the papers by filing a written response. The habeas court may, in its discretion, grant oral argument or a hearing, but one is not mandated. We believe this interpretation draws a proper balance between the competing interests of affording petitioners due process while addressing the need for the expeditious resolution of habeas petitions in an effort to reach the meritorious cases. We observe that the Rules Committee remains free to amend the text of the relevant rules as it deems appropriate.

---

[1] We take judicial notice of the fact that there are several other pending appeals that raise this same issue. See *Pierce* v. *Commissioner of Correction* (AC 44188); *Howard* v. *Commissioner of Correction* (AC 42824); *Leffingwell* v. *Commissioner of Correction* (AC 41663); *Horak* v. *Commissioner of Correction* (AC 41662); *Brewer* v. *Commissioner of Correction* (AC 41635).

Brown *v.* Commissioner of Correction

The present case arises out of a petition for a writ of habeas corpus filed by the self-represented petitioner, relating to the withdrawal of his public defender's appearance during the course of his underlying criminal trial. The habeas court, acting on its own motion and without prior notice, dismissed the petition as repetitious pursuant to Practice Book § 23-29 (3) and subsequently denied the petition for certification to appeal. The Appellate Court summarily dismissed the petitioner's appeal; *Brown* v. *Commissioner of Correction*, 196 Conn. App. 902, 225 A.3d 980 (2020); and this court subsequently granted the petitioner's petition for certification to appeal from the judgment of the Appellate Court. *Brown* v. *Commissioner of Correction*, 335 Conn. 920, 231 A.3d 1169 (2020). On appeal, the petitioner claims that he was entitled to both prior notice and an opportunity to be heard, and that, as a result, the Appellate Court improperly dismissed his appeal from the habeas court's judgment of dismissal and the denial of his petition for certification to appeal. We agree, in part, with the petitioner that a dismissal under § 23-29, which occurs after the writ has issued and the action has commenced, requires some procedural safeguards, specifically, prior notice and an opportunity to submit a brief or a written response, but not a full hearing. We therefore reverse the judgment of the Appellate Court and remand the case for further proceedings before the habeas court consistent with this opinion.

The following undisputed facts and procedural history are relevant to the present appeal. The petitioner was convicted in 1999, following a jury trial, of arson in the first degree and conspiracy to commit arson in the first degree, and sentenced to twenty-five years of imprisonment. *State* v. *Brown*, 256 Conn. 291, 293, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001). Although the petitioner was

Brown *v.* Commissioner of Correction

originally provided counsel by the public defender's office, counsel later withdrew because the petitioner was found to possess significant assets. Id., 297 n.6.[2] The petitioner waived his right to appeal the withdrawal of the public defender and proceeded to represent himself at his criminal trial. Id., 297. The petitioner appealed his conviction to the Appellate Court on the sole ground of prosecutorial impropriety. See id., 293. After transferring the appeal to this court, we rejected that claim and affirmed the judgment of conviction. Id., 293, 313.

The petitioner, represented by assigned counsel, filed his first amended habeas petition in 2002, challenging his conviction on the following four grounds: improper withdrawal by trial counsel, ineffective assistance of trial counsel, judicial misconduct by the trial judge, and ineffective assistance by his appellate counsel. The habeas court denied his habeas petition, and the Appellate Court affirmed the habeas court's judgment. *Brown* v. *Commissioner of Correction*, 92 Conn. App. 382, 383, 389, 885 A.2d 761 (2005), appeal dismissed, 281 Conn. 466, 915 A.2d 870 (2007).

The petitioner filed a second amended habeas petition in 2009, claiming that his first habeas counsel had rendered ineffective assistance by failing to allege that (1) he was deprived of his constitutional right to counsel at his criminal trial, and (2) defense counsel in his direct appeal had improperly failed to raise this issue before the Appellate Court. The habeas court denied this second petition as well, finding that it was "clear that the petitioner was provided all of his due process rights when the court made its initial determination to allow the public defenders to withdraw." Once again, the

_____

[2] The state asserted that, since 1996, the petitioner "had been the owner of several properties, namely, a nightclub, other businesses and an airplane, among other assets." *State* v. *Brown*, supra, 256 Conn. 297 n.6. The petitioner did not contest these assertions at trial and, indeed, still does not contest them in the present appeal.

Brown *v.* Commissioner of Correction

Appellate Court affirmed the habeas court's judgment. See *Brown* v. *Commissioner of Correction*, 141 Conn. App. 251, 253, 263, 61 A.3d 554, cert. denied, 308 Conn. 941, 66 A.3d 883 (2013).[3]

The petitioner, representing himself, then filed a third habeas petition in 2014, which he amended in 2015 with the assistance of counsel, claiming "ineffective waiver of counsel in violation of [his] sixth amendment right to counsel." The habeas court, *Fuger, J.*, issued an oral decision in which he denied that petition, concluding that any claim challenging the trial court's ruling permitting the withdrawal of the public defender during the criminal trial was barred by res judicata. Judge Fuger advised the petitioner: "I'm sorry to say to you that the issue is over and done with. I understand how you feel, but the matter has been litigated. And, at this point, I see no further relief . . . . [I]t would be, I think, very difficult for [the petitioner] to be able to find something unique to be able to proceed on [another] habeas petition. I think [the petitioner has] sort of had all the bites at the apple that [he] can [have]." The Appellate Court summarily dismissed the appeal that followed. See *Brown* v. *Commissioner of Correction*, 181 Conn. App. 901, 182 A.3d 112, cert. denied, 329 Conn. 901, 184 A.3d 1215 (2018).

---

[3] In 2013, the petitioner filed a habeas petition in federal court, challenging his conviction on the ground that he was denied his constitutional right to be represented by counsel at his criminal trial. *Brown* v. *Commissioner of Correction*, Docket No. 3:13-CV-1133 JCH, 2014 WL 1820642, *3 (D. Conn. April 4, 2014). The United States District Court for the District of Connecticut ultimately denied the petition. See *Brown* v. *Commissioner of Correction*, Docket No. 3:18-cv-1125 (MPS), 2018 WL 3715279, *2 (D. Conn. August 3, 2018).

The petitioner later filed a second federal habeas petition in 2018, claiming, inter alia, that he was not canvassed before he waived his right to contest the withdrawal of the public defender and that all of his prior counsel were ineffective for not raising that issue. Id. The District Court transferred the petition to the United States Court of Appeals for the Second Circuit to determine whether it would authorize the successive petition; id., *3; and the Second Circuit denied such authorization.

The petitioner, representing himself, then filed the fourth and present habeas petition on October 29, 2018. In this petition, the petitioner claims that he was not canvassed properly about his right to appeal from the withdrawal of his public defender before the start of his criminal trial. That petition contains the following assertion: "[The] petitioner is claim[ing] only being 'not constitutionally canvassed' at the time [he] waived [his] rights . . . to appeal [his] public defender's withdrawal . . . [and] [n]othing [else], so ther[e] [are] no res judicata issues." (Emphasis omitted.) On November 15, 2018, the habeas court granted the petitioner's request for appointment of counsel and his application for a waiver of fees. On November 19, 2018, the habeas court, *Newson, J.*, acting on its own motion and without prior notice to the parties, issued an order dismissing this fourth petition as repetitious pursuant to Practice Book § 23-29 (3). The petitioner requested certification to appeal from that dismissal, which the habeas court denied. The petitioner then appealed to the Appellate Court from the dismissal of the fourth petition and the denial of the petition for certification to appeal.

Following oral argument, the Appellate Court summarily dismissed the petitioner's appeal. *Brown* v. *Commissioner of Correction*, supra, 196 Conn. App. 902. We subsequently granted the petitioner's petition for certification to appeal to this court in order to determine whether the Appellate Court properly dismissed the petitioner's appeal challenging the propriety of the habeas court's dismissal of the fourth habeas petition under Practice Book § 23-29. See *Brown* v. *Commissioner of Correction*, supra, 335 Conn. 920. In the present appeal, the petitioner renews his claim that the habeas court should not have dismissed his petition under § 23-29 without first providing him with prior notice and an opportunity to be heard. In response, the

Brown *v.* Commissioner of Correction

respondent claims that the habeas court's dismissal was proper.

The appropriate standard of review is undisputed. "Plenary review . . . is appropriate because this appeal requires us to interpret the rules of practice." *Gilchrist* v. *Commissioner of Correction,* supra, 334 Conn. 553. "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . [P]rinciples of statutory construction apply with equal force to . . . [the] rules [of practice] . . . . The interpretation and application of a statute, and thus a rule of practice, presents questions of law over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *State* v. *Heredia,* 310 Conn. 742, 755, 81 A.3d 1163 (2013). "[When] the meaning of a statute [or rule] is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction. . . . If a statute or rule is ambiguous, however, we construe it with due regard for the authors' purpose and the circumstances surrounding its enactment or adoption." (Citations omitted; internal quotation marks omitted.) *Grievance Committee for the Hartford-New Britain Judicial District* v. *Trantolo,* 192 Conn. 15, 22, 470 A.2d 228 (1984).

We therefore begin with the text of the applicable provisions. Practice Book § 23-24 (a) provides: "The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that (1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available." If the judicial authority declines to issue the writ under this rule, it "shall notify the petitioner" of its decision. Practice Book § 23-24 (b). Practice Book § 23-29 provides: "The judicial authority

Brown *v.* Commissioner of Correction

may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that: (1) the court lacks jurisdiction; (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition; (4) the claims asserted in the petition are moot or premature; [or] (5) any other legally sufficient ground for dismissal of the petition exists.''

This court recently analyzed the interplay between these two provisions in *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 548. In that case, we concluded that Practice Book § 23-24 requires the habeas court to review petitions *before* issuing a writ. See id., 561, 562. If the habeas court declines to issue the writ on the basis of any of the three grounds enumerated in § 23-24, the filing is rejected and ''there is no service of process, no civil action and, accordingly, no need for the appointment of counsel.'' Id., 561. If the petition is rejected under § 23-24, the judicial authority acts without giving the petitioner prior notice or an opportunity to be heard. See id., 563. Because the petitioner in *Gilchrist* was not actually in custody for the conviction being challenged when the petition was filed; id., 550; the matter was remanded to the habeas court with direction to decline to issue the writ pursuant to § 23-24 (1) for lack of jurisdiction. See id., 563. In *Gilchrist*, we observed that, once the habeas court issues the writ and the action commences, Practice Book § 23-29 is the applicable provision that allows a habeas court to dismiss a petition. See id., 561, 563.

*Gilchrist* firmly established that Practice Book § 23-24 acts as a gatekeeping mechanism that allows a habeas court to review and dispose of a clearly defective

Brown *v.* Commissioner of Correction

petition by simply providing the petitioner with notice of its decision to decline to issue the writ. As a result of that conclusion in *Gilchrist*, however, we did not address the separate question of whether, once a writ has issued, a petition may be dismissed by a habeas court, on its own motion,[4] under Practice Book § 23-29 without prior notice or an opportunity to be heard. This court is now asked to determine what, if any, procedure is required prior to a habeas court's dismissal of a petition under § 23-29. See footnote 1 of this opinion. We conclude that prior notice and an opportunity to submit a brief or written response are required before a habeas court may dismiss a petition pursuant to § 23-29.

Practice Book 23-29 has at least two plausible interpretations—one that requires notice and an opportunity to be heard before dismissal, and one that does not. Compare *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 341, 199 A.3d 1127 (2018) (concluding that hearing is not required before habeas petition is dismissed under § 23-29), rev'd, 345 Conn. 39,      A.3d (2022), with id., 353 (*Bishop, J.*, concurring) (concluding that § 23-29 should require notice and opportunity to be heard prior to dismissal). "The test to determine ambiguity is whether the statute [or rule], when read in context, is susceptible to more than one

---

[4] Practice Book § 23-29 does permit the judicial authority to dismiss a petition "at any time, upon its own motion or upon the motion of the respondent . . . ." Thus, this section allows the court to act on its own motion, even after the writ has issued. The question remains what, if any, process is due the petitioner before the court issues such a dismissal. As Judge Bishop noted in his concurrence in *Boria*, if the respondent files a motion to dismiss, then the petitioner would receive notice. See *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 363, 199 A.3d 1127 (2018) (*Bishop, J.*, concurring) ("[when] the respondent properly serves the petitioner with notice of [a] motion and the grounds therefor, and the petitioner simply fails to exercise his right to file a brief or [to] make oral argument, it is clear that the habeas court may properly decide the motion without having heard from the petitioner"), rev'd on other grounds, 345 Conn. 39,      A.3d      (2022).

Brown *v.* Commissioner of Correction

reasonable interpretation.'' (Internal quotation marks omitted.) *Not Another Power Plant* v. *Connecticut Siting Council*, 340 Conn. 762, 779, 265 A.3d 900 (2021); see also *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 400, 999 A.2d 682 (2010) (''Although [statutory] silence does not . . . necessarily equate to ambiguity . . . [the] silence [in the lien provision at issue] renders [that] provision ambiguous with respect to its scope because there is more than one plausible interpretation of its meaning. . . . Accordingly, we may consider the full panoply of available materials with which to interpret the statute.'' (Citations omitted; internal quotation marks omitted.)). Because both of these interpretations of § 23-29 are plausible, the text is ambiguous.

Although ''statute and case law evince a strong presumption that a [habeas] petitioner . . . is entitled to present evidence in support of his claims''; *Mercer* v. *Commissioner of Correction*, 230 Conn. 88, 93, 644 A.2d 340 (1994); our rules of practice once allowed for the dismissal of habeas petitions without a hearing under specified circumstances. Specifically, Practice Book (1995) § 531 provided: ''If the petitioner has filed a previous application, it and the action taken thereon shall be summarily described in the pending application. If a previous application brought on the same grounds was denied, the pending application may be dismissed without hearing, unless it states new facts or proffers new evidence not reasonably available at the previous hearing.'' This provision *expressly* authorized habeas courts to dismiss repetitive petitions ''without [a] hearing . . . .'' See *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 355 (*Bishop, J.*, concurring). This text was subsequently eliminated from the rules of practice as part of a wholesale revision of the Practice Book provisions regarding habeas proceedings. See id., 358–59 (*Bishop, J.*, concurring).

Brown *v.* Commissioner of Correction

In crafting the new language governing dismissals, the Rules Committee expanded the bases on which a habeas court may dismiss a habeas proceeding, after the issuance of the writ, beyond mere repetition. See Practice Book § 23-29. The Rules Committee, however, chose to omit language previously contained in Practice Book (1995) § 531 that authorized the judicial authority to dismiss a petition without a hearing. These newly created provisions also included, among other provisions, Practice Book § 23-24, which allows the habeas court to decline to issue the writ in the first instance without either prior notice or an opportunity to be heard.

The progression of these rules, read in light of our decision in *Gilchrist* and their relationship to the general rules governing habeas procedures; see Practice Book § 23-21 et. seq.; guides us to the conclusion that the Rules Committee intended for a habeas court to have the authority under Practice Book § 23-24 to decline to issue the writ without providing prior notice or an opportunity to be heard if the court lacks jurisdiction over the claim, the petition is wholly frivolous on its face, or the relief requested in the petition is not available. The same considerations, however, lead us naturally to infer that the Rules Committee intended to require something more under Practice Book § 23-29 when it chose to abandon the language previously permitting a habeas court to dismiss a petition "*without* [*a*] *hearing* . . . ."[5] Practice Book (1995) § 531; cf. *Boria*

_____

[5] The respondent argues that the language in Practice Book § 23-29 allowing the court to dismiss a petition "at any time" necessarily means that the court may dismiss a petition before giving prior notice or an opportunity to respond. We disagree. As this court's decision in *Gilchrist* makes clear, that particular phrase is, itself, necessarily limited to the period of time following issuance of the writ pursuant to Practice Book § 23-24. See *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 561 ("[i]t is true that § 23-29 states that the judicial authority may take action under its authority 'at any time,' but the 'time' it references necessarily is defined by the time at which the rule itself becomes operative, which is after the habeas court issues the writ and the action has commenced"). Although the plain

Brown *v.* Commissioner of Correction

v. *Commissioner of Correction*, supra, 186 Conn. App. 359 n.7 (*Bishop, J.*, concurring) ("the provisions of . . . §§ 23-24 and 23-29, authorizing [a] habeas court to summarily dispose of a writ or petition for certain enumerated grounds, are complementary and not mere duplications of the same judicial authority").

We likewise observe that, under Practice Book § 23-24, a habeas court is required to provide notice to the petitioner only after it has already declined to issue the writ. The Rules Committee, however, chose not to include a similar provision in Practice Book § 23-29. This textual difference between these two provisions provides us with yet another reason to conclude that dismissal under § 23-29 requires additional procedural safeguards beyond those required for a decision not to issue the writ under § 23-24. Those procedural safeguards, we conclude, must include at least prior notice to the petitioner or the petitioner's counsel and an opportunity to file a written response.[6]

It does not, however, necessarily follow from this premise that a habeas court's dismissal on its own motion pursuant to Practice Book § 23-29 requires a full hearing, particularly when both provisions contain similar bases for dismissal. See, e.g., Practice Book § 23-24 (a) (1); Practice Book § 23-29 (1). In reaching this conclusion, we are guided by the public policy underlying the legislature's comprehensive habeas reform in

text of the rule indicates that the habeas court, on its own motion or that of the respondent, may dismiss a petition once the writ has issued, it does not purport to eliminate procedural requirements. Simply put, the use of the phrase "at any time" in § 23-29 appears to govern when, and not how, a dismissal can occur.

[6] We can discern no principled reason for concluding that the Rules Committee would implicitly require notice to a petitioner before a dismissal under Practice Book § 23-29 without also providing the petitioner with some means of response. Further, in cases in which counsel has already been appointed and there is an appearance on file, counsel should receive the notice and the date by which counsel should file a brief or a response.

Brown *v.* Commissioner of Correction

2012. See P.A. 12-115, § 1. As this court has previously recognized, those amendments were "intended to supplement [the] efficacy [of General Statutes § 52-470] in averting frivolous habeas petitions and appeals." *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 567, 153 A.3d 1233 (2017). Although "the 2012 habeas reform did not limit the right to counsel under [General Statutes] § 51-296 (a) or otherwise render habeas relief unavailable in broad categories of cases"; id.; the primary goal underlying the legislature's amendments was, clearly, to address the increase in habeas petitions and to efficiently dispose of frivolous petitions. See 55 H.R. Proc., Pt. 5, 2012 Sess., p. 1601, remarks of Representative Arthur O'Neill ("[The 2012 amendments were] the first real progress we have made in trying to improve the habeas corpus process in Connecticut and [to] expedite things so that the legitimate habeas . . . petitions get heard as quickly as possible. And what's blocking the system up are a lot of cases where there's not much merit, it seems, to the claims, but there they keep on coming."). Indeed, in crafting the rules governing habeas proceedings, the Rules Committee itself expressly provided that "[t]he judicial authority may establish such additional procedures as it determines will aid in the fair and *summary disposition* of habeas . . . petitions, including, but not limited to, scheduling orders." (Emphasis added.) Practice Book § 23-34.[7]

---

[7] Because this provision contemplates the creation of additional rules specifically applicable to habeas proceedings, we respectfully disagree with the concurrence that we must consider the relationship of Practice Book § 23-29 to the broader scheme of the rules for civil actions "to ensure the coherency of our construction." (Internal quotation marks omitted.) Indeed, Practice Book § 23-21 provides in relevant part that, "[e]xcept as otherwise provided herein, the procedures set forth in Sections 23-22 through 23-42 shall apply to any petition for a writ of habeas corpus which sets forth a claim of illegal confinement. . . ."

We also disagree that Practice Book § 23-34 is mirrored by Practice Book § 23-14, as the latter specifically limits complex litigation judges to orders facilitating "*the management of . . . complex litigation cases.*" (Emphasis added.) The authority vested by § 23-34 is broader. It contains no such

16 OCTOBER, 2022 345 Conn. 1

Brown *v.* Commissioner of Correction

In ascertaining the meaning of Practice Book § 23-29 or its interplay with Practice Book § 23-24, we need not look to the general rules of civil procedure or the specific provisions dealing with motions to dismiss, such as Practice Book §§ 11-10 and 11-18. Although we acknowledge that habeas actions are civil proceedings in nature, the introductory provision to the general rules governing habeas proceedings makes it clear that, "[*e*]*xcept as otherwise provided herein*, the procedures set forth in *Sections 23-22 through 23-42 shall apply* to any petition for a writ of habeas corpus which sets forth a claim of illegal confinement." (Emphasis added.) Practice Book § 23-21. The same provision goes on to exclude habeas petitions brought to determine the custody and visitation of children or those filed on behalf of a person confined to a hospital on the basis of a mental illness. Practice Book § 23-21. It is clear from this language that the Rules Committee did not intend for the general provisions governing civil cases to resolve the question before us.

It would be both overly burdensome and inefficient to require habeas courts to give full hearings on every petition that survives the habeas court's initial gatekeeping review[8] under Practice Book § 23-24 but that thereafter appears to warrant dismissal under Practice Book § 23-29. Instead, on the basis of our interpretation of the rules as established by the Rules Committee, we conclude that petitioners, after receiving notice of the court's intention to consider dismissal of the petition,

limitation and, in fact, expressly emphasizes that the habeas court's discretion is not limited to mere scheduling orders.

[8] Although we agree with Judge Bishop that, "in the long run, a more fulsome use of the court's authority pursuant to [Practice Book] § 23-24 would maximize judicial efficiency" by "weed[ing] out inappropriate [habeas petitions] as a preliminary matter pursuant to its gatekeeping function"; *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 359 n.7 (*Bishop, J.*, concurring); we recognize that, in some cases, the habeas court may not have all of the necessary information required at the time of the initial review to make that determination.

Brown *v.* Commissioner of Correction

have a right to be heard on the papers by filing a brief
or a written response.[9] This interpretation, we believe,
satisfies the intent of the Rules Committee's omission
of the phrase "without [a] hearing" from § 23-29 and
its express allowance of postdecisional notice in § 23-
24. This reading not only maintains a meaningful distinc-
tion between §§ 23-24 and 23-29, but also prevents over-
burdening an already strained habeas docket by
requiring a full hearing for legally deficient petitions
under § 23-29. We note that a habeas court may, of
course, still hold a full hearing when it deems it appro-
priate.[10]

Because the habeas court in the present case did not
have the benefit of this court's decision in *Gilchrist*,
the case must be remanded to the habeas court for it
to first determine whether any grounds exist for it to
decline to issue the writ pursuant to Practice Book § 23-
24.[11] If the writ is issued, and the habeas court again
elects to exercise its discretion to dismiss the petition-

[9] As we noted at the outset, and particularly in light of *Gilchrist* and the
majority and concurring opinions in the present case, we expressly welcome
the Rules Committee to address the interplay between these rules and to
amend the text of the relevant rules to the extent it deems necessary.

[10] Although Practice Book § 23-40 (a) affords a habeas petitioner the right
to be present at "any evidentiary hearing and at any hearing or oral argument
on a question of law which may be dispositive of the case," this rule speaks
to when a petitioner's presence is necessary and not when a hearing is
required. This rule does not require the habeas court to conduct a hearing
prior to the dismissal of the petition pursuant to Practice Book § 23-29. This
interpretation does not render the petitioner's right to be present illusory.

Section 23-29 still serves to ensure that a petitioner has a right to be at
any hearing or oral argument that the habeas court, in its discretion, grants
on its own motion to dismiss pursuant to that section. As we noted pre-
viously, the habeas court is well within its right to hold oral argument or
to conduct a hearing when it deems it necessary.

[11] We are aware that there are other cases pending before this court and
the Appellate Court that were decided without the benefit of this court's
decision in *Gilchrist*. See footnote 1 of this opinion. In cases decided prior
to *Gilchrist*, the most efficient process to resolve those cases is to remand
them to the habeas court to determine first whether grounds exist to decline
the issuance of the writ.

Brown *v.* Commissioner of Correction

er's habeas petition on its own motion pursuant to Practice Book § 23-29, it must, in accordance with the foregoing, provide the petitioner with prior notice and an opportunity to submit a brief or a written response to the proposed basis for dismissal.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the habeas court's judgment and to remand the case to that court for further proceedings consistent with this opinion.

In this opinion ROBINSON, C. J., and D'AURIA, MULLINS, ECKER and KELLER, Js., concurred.

McDONALD, J., concurring in the judgment. We have often explained that "[t]he rules of practice were promulgated to create a harmonious body of law, and we are required to read statutes [or rules] together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute [or rule] . . . we look not only at the provision at issue, but also to the broader statutory [or Practice Book] scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 561–62, 223 A.3d 368 (2020). With these principles in mind, I write separately to honor the context in which this court has consistently analyzed habeas actions and conclude that the Practice Book provisions governing motions to dismiss in civil actions dictate which procedures are required when a habeas court dismisses a petition for a writ of habeas corpus pursuant to Practice Book § 23-29.

I can discern no statutory interpretative analysis that would permit the result reached by the majority, whose opinion is devoid of any citation to chapter 11 of our rules of practice, the chapter that governs the relevant procedures applicable to civil actions, including habeas

Brown *v.* Commissioner of Correction

corpus actions. Rather than analyze the controlling Practice Book sections in chapter 11, the majority opinion relies on perceived textual differences between Practice Book §§ 23-24 and 23-29, a sweeping citation to § 23-34, and certain extratextual sources in an effort to support its conclusion. Relying on these sources, the majority concludes that, when a habeas court, on its own motion, seeks to dismiss a petition for a writ of habeas corpus pursuant to § 23-29, it is required to provide the petitioner only with notice of the motion and an opportunity to submit a written brief in opposition to the motion but not a hearing as of right. None of the sources relied on by the majority, however, requires notice and an opportunity to submit a written brief. Notably, the majority omits the true source of those requirements—chapter 11 of the rules of practice—in an effort to avoid acknowledging that a hearing is also required as of right. See, e.g., Practice Book § 11-1 (petitioner is entitled to notice of motion to dismiss); Practice Book § 11-10 (a) (petitioner is entitled to submit written brief in opposition to motion to dismiss); Practice Book § 11-18 (a) (petitioner is entitled to hearing on motion to dismiss). By carefully avoiding any citation to chapter 11, the majority endeavors to create its own set of rules, whereby a petitioner is not entitled to a hearing to argue the merits of a habeas court's motion to dismiss.

Tellingly, the majority does not offer a substantiated rationale for denying a petitioner his "as of right" opportunity to argue his grounds for not dismissing the petition when that effort is initiated by the habeas court. The most the majority can muster is its claim, unsupported by any evidence, that requiring oral argument before dismissing a habeas petition, in that limited subset of court initiated dismissal motions, would be "overly burdensome" on the habeas court and, therefore, "inefficient . . . ." That argument, however, could apply

Brown *v.* Commissioner of Correction

with equal, if not greater, force to every other habeas case, in which a motion to dismiss is filed by a respondent, rather than initiated by the habeas court. Indeed, it could also apply to every summary process action or foreclosure case in this state. Would the majority suggest that this court could bypass the exact same rule at issue in this case, which provides an "as of right" opportunity to argue a motion to dismiss, in those instances too, because it might make the job of the judge easier or more convenient? My reading of the majority's opinion suggests that this court could do exactly that, if it wanted, regardless of the rules that all of the judges of the Superior Court have adopted as a cohesive, legislative body.

Instead, I choose a different path that honors the choices made by the Superior Court judges. Reading the provisions of the rules of practice together, as we must, I conclude that a habeas court must provide parties with notice, an opportunity to submit a written opposition, and a hearing as of right before it dismisses a petition for a writ of habeas corpus pursuant to Practice Book § 23-29. Accordingly, I respectfully concur in the judgment but disassociate myself from the analytic path the majority has trod.

I agree with the majority's recitation of the relevant facts, procedural history, and standard of review. I also agree with the majority that, at the time that the habeas court dismissed the present habeas action filed by the petitioner, Judson Brown, the court did not have the benefit of our decision in *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 548. In *Gilchrist*, we clarified the proper application and scope of the two Practice Book provisions under which a habeas court may dispose of a habeas petition on the basis of pleading deficiencies, Practice Book §§ 23-24 and 23-29. Section 23-24 (a) provides that the habeas court may decline to issue the writ of habeas corpus if "it appears that:

Brown *v.* Commissioner of Correction

(1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available.'' If the judicial authority declines to issue the writ, it is required to ''notify the petitioner . . . .'' Practice Book § 23-24 (b). Section 23-29 similarly allows the habeas court to dismiss the petition at any time, on its own motion or on the motion of the respondent, if the court determines that ''(1) [it] lacks jurisdiction; (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition; (4) the claims asserted in the petition are moot or premature; [or] (5) any other legally sufficient ground for dismissal of the petition exists.''

In *Gilchrist*, we concluded that Practice Book § 23-24 serves a specific ''screening function''; *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 560; and allows a habeas court to review petitions ''prior to the issuance of the writ of habeas corpus and before commencement of a habeas action.'' Id., 561. We emphasized that § 23-24 ''is intended only to weed out obviously and unequivocally defective petitions,'' as ''[b]oth statute and case law evince a strong presumption that a petitioner for a writ of habeas corpus is entitled to present evidence in support of his claims.'' (Internal quotation marks omitted.) Id., 560. ''If the court declines to issue the writ [pursuant to § 23-24], no further action is necessary beyond notifying the petitioner because there is no service of process, *no civil action* and, accordingly, no need for the appointment of counsel.'' (Emphasis added.) Id., 561. If the court does issue the writ, however, ''all further proceedings should continue in accordance with the procedures set forth in our rules of practice, including Practice Book § 23-29.'' Id., 563.

Brown *v.* Commissioner of Correction

The distinction between a habeas court's decision to decline to issue a writ pursuant to Practice Book § 23-24 and its decision to dismiss the petition pursuant to Practice Book § 23-29 is critical. Once a habeas petition survives initial review—and, thus, makes it past the judicial authority's gatekeeping function—a *civil* action has commenced, and the petitioner is entitled to certain procedural rights and safeguards. See id., 556–57, 561, 563. It is beyond dispute that a habeas action is a civil action in our courts, and, therefore, these rights and safeguards include all of the procedures applicable to other civil actions unless, of course, they are supplemented or superseded by the more specific rules pertaining to habeas actions. See id., 555.

In the present case, the habeas court dismissed the petition pursuant to Practice Book § 23-29 (3) without, first, having considered whether it could decline to issue the writ under Practice Book § 23-24. See id., 562 ("[f]irst, upon receipt of a habeas petition . . . the judicial authority must review the petition to determine if it is patently defective because the court lacks jurisdiction, the petition is wholly frivolous on its face, or the relief sought is unavailable" (citations omitted)). I therefore agree with the majority that the judgment of the Appellate Court should be reversed and the case remanded to the habeas court so that it can determine whether grounds exist to decline to issue the writ pursuant to § 23-24. I agree with the majority that this is the most efficient approach for resolving cases pending before this court and the Appellate Court that were decided prior to this court's decision in *Gilchrist*. See footnote 11 of the majority opinion.

In my view, however, the majority should have ended its analysis there, notwithstanding the pending cases it cites; see footnote 1 of the majority opinion; because that holding fully disposes of this appeal. Nevertheless, because the majority opinion continued on to analyze

345 Conn. 1 OCTOBER, 2022 23

Brown *v.* Commissioner of Correction

the petitioner's rights prior to dismissal of his petition pursuant to Practice Book § 23-29, I write separately to express my disagreement with this dictum and the majority's interpretation of the relevant Practice Book provisions.

Resolution of the issue of whether habeas courts are required to provide parties with notice and an opportunity to be heard before they dismiss a habeas petition pursuant to Practice Book § 23-29 requires this court to construe the rules of practice. Accordingly, our standard of review is plenary. See, e.g., *Disciplinary Counsel* v. *Elder*, 325 Conn. 378, 386, 159 A.3d 220 (2017). The familiar principles of statutory interpretation, which apply with equal force to this court's interpretation of our rules of practice, guide my analysis. See, e.g., *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594, 181 A.3d 550 (2018). In construing statutes or Practice Book provisions, "[General Statutes] § 1-2z directs us first to consider the text of the statute [or rule] itself and *its relationship to other statutes* [*or rules*]. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute [or rule] shall not be considered." (Emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Heredia*, 310 Conn. 742, 756, 81 A.3d 1163 (2013). It is axiomatic that, when interpreting a statute or Practice Book provision, "we are guided by the principle that the [promulgating authority] is always presumed to have created a harmonious and consistent body of law . . . . Construing statutes [or Practice Book provisions] by reference to others advances [the values of harmony and consistency within the law]. In fact, courts have been said to be under a duty to construe statutes [and Practice Book provisions] harmoniously [when] that can reasonably be done." (Internal

Brown *v.* Commissioner of Correction

quotation marks omitted.) *State* v. *Agron*, 323 Conn. 629, 638, 148 A.3d 1052 (2016); see also, e.g., *Wiseman* v. *Armstrong*, 295 Conn. 94, 102–104, 989 A.2d 1027 (2010) (looking to relevant Practice Book scheme to "ensure the coherency of [its] construction" and applying principle that promulgating authority is presumed to have intended to "[create] a harmonious and consistent body of law" to court's interpretation of relevant Practice Book provision (internal quotation marks omitted)).

In accordance with § 1-2z, I first turn to the relevant language of Practice Book § 23-29 to determine whether the provision expressly answers the question of whether a habeas court is required to provide parties with notice and an opportunity to be heard before the court dismisses a habeas petition pursuant to that rule. Section 23-29 provides: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that: (1) the court lacks jurisdiction; (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition; (4) the claims asserted in the petition are moot or premature; [or] (5) any other legally sufficient ground for dismissal of the petition exists." The majority correctly notes that § 23-29 is silent on the issue of whether prior notice or an opportunity to be heard is required before dismissal. Where I part ways with the majority is its conclusion that the provision's silence renders it ambiguous.

"It is well settled . . . that silence does not necessarily equate to ambiguity. . . . Rather, [i]n determining whether legislative silence renders a statute [or Practice Book provision] ambiguous, we read the statute [or

Brown *v.* Commissioner of Correction

Practice Book provision] *in context* to determine whether the language is susceptible to more than one reasonable interpretation." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Ramos*, 306 Conn. 125, 136, 49 A.3d 197 (2012); see also, e.g., *Mayfield* v. *Goshen Volunteer Fire Co.*, 301 Conn. 739, 745, 754–56, 22 A.3d 1251 (2011); *Hicks* v. *State*, 297 Conn. 798, 802, 1 A.3d 39 (2010); *State* v. *Orr*, 291 Conn. 642, 653–54, 969 A.2d 750 (2009); *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 133–34, 848 A.2d 451 (2004).[1]

The majority reasons that Practice Book § 23-34's reference to the fact that "[t]he judicial authority may establish . . . additional procedures" somehow allows this court to bypass its duty to consider Practice Book § 23-29 against the backdrop of the broader Practice Book scheme. See footnote 7 of the majority opinion and accompanying text. I disagree. Section 23-34 provides that "[t]he judicial authority may establish such additional procedures as it determines will aid in the fair and summary disposition of habeas corpus petitions, including, but not limited to, scheduling orders." A far cry from giving a habeas court the broad authority to create any additional procedural rule it deems appropriate in a given case, § 23-34 merely governs case man-

---

[1] The majority opinion cites the Appellate Court's majority and concurring opinions in *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 199 A.3d 1127 (2018), rev'd, 345 Conn. 39,    A.3d    (2022), as support for its conclusion that Practice Book § 23-29 is open to "at least two plausible interpretations . . . ." I disagree that the interpretation of § 23-29 advanced by the Appellate Court's majority opinion is at all plausible. Indeed, even the majority in *Boria* conceded that "the analysis contained in Judge Bishop's concurrence has some appeal" but thought it "prudent not to weigh in further with respect to [the] issue" until *Gilchrist* was decided. *Boria* v. *Commissioner of Correction*, supra, 341 n.9. The Appellate Court's reasoning, in my view, suffered from the same analytical misstep present in the majority's analysis here; the Appellate Court did not read § 23-29 in harmony with the entire Practice Book scheme, as was its duty. See, e.g., *State* v. *Agron*, supra, 323 Conn. 638.

Brown *v.* Commissioner of Correction

agement matters and is applicable only after a habeas petition has survived the judicial authority's review pursuant to Practice Book §§ 23-24 and 23-29, and a civil action has commenced.

In *Gilchrist*, we observed that "[t]he rules of practice governing habeas corpus proceedings . . . clearly evince an order of operations, providing for procedures and motions in the sequence in which they generally occur in a typical habeas case." (Citation omitted.) *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 562. It was this principle, coupled with the unique procedures applicable to habeas actions, that led us to conclude that Practice Book § 23-24 comes first in the procedural sequence. See id., 556–62. Under its authority pursuant to § 23-24, the judicial authority can decline to issue the writ if the petition is patently defective. See id., 562–63. If the writ is issued, however, the habeas court should then take the actions necessary to prepare the case to move forward, such as ruling "on any request for the appointment of counsel and any application for the waiver of filing fees and costs of service." Id., 563; see also Practice Book §§ 23-25 and 23-26. "After the writ has issued, all further proceedings should continue in accordance with the procedures set forth in our rules of practice, including Practice Book § 23-29." *Gilchrist* v. *Commissioner of Correction*, supra, 563. Once the petition survives review under § 23-29, and the civil action has commenced, our rules of practice provide guidance for filing a return and a reply to the return, amending a petition or pleading, and requesting a more specific statement. See Practice Book §§ 23-30 through 23-33. It would make little sense for the Rules Committee of the Superior Court to insert such procedures in between yet another avenue through which a habeas court could dismiss a habeas petition. Instead, in my view, § 23-34 introduces the subsequent sections, which deal specifically with the procedural aspects of the

Brown *v.* Commissioner of Correction

habeas action: the schedule for filing pleadings; Practice Book § 23-35; summary judgment; Practice Book § 23-37;[2] discovery; Practice Book § 23-38; depositions; Practice Book § 23-39; and court appearances. Practice Book § 23-40. In addition to the procedures to which habeas petitioners are explicitly entitled, "[t]he judicial authority may establish such *additional* procedures" as it deems necessary to move the case forward and, thus, reach a "fair and summary disposition . . . ." (Emphasis added.) Practice Book § 23-34; see also, e.g., *Kelsey* v. *Commissioner of Correction*, 329 Conn. 711, 725, 189 A.3d 578 (2018) (citing § 23-34 in support of observation that "the rules of practice expressly recognize the habeas court's discretion over *scheduling*" (emphasis added)).

My reading of Practice Book § 23-34 also garners support from a similar provision in chapter 23, the "Miscellaneous Remedies and Procedures" chapter of our rules of practice. Section 23-34 substantively mirrors Practice Book § 23-14, which provides: "The judge to whom complex litigation cases have been assigned may stay any or all further proceedings in the cases, may transfer any or all further proceedings in the cases to the judicial district where the judge is sitting, may hear all pretrial motions, and *may enter any appropriate order which facilitates the management of the complex litigation cases*." (Emphasis added.) Like § 23-34, I read § 23-14 to give complex litigation judges authority over

---

[2] Like Practice Book § 23-29, Practice Book § 23-37, which governs summary judgment in habeas actions, does not, by its terms, provide for a hearing as of right. Under the majority's expansive reading of Practice Book § 23-34, a habeas judge could, theoretically, rule on a motion for summary judgment—or a motion to strike—without providing a petitioner with an opportunity to be heard. Surely, this would raise due process concerns. Cf. *State* v. *Anderson*, 319 Conn. 288, 311, 127 A.3d 100 (2015) ("[F]or more than [one] century the central meaning of procedural due process has been clear: *Parties whose rights are to be affected are entitled to be heard* . . . ." (Emphasis added; internal quotation marks omitted.)).

Brown *v.* Commissioner of Correction

matters of docket management. See, e.g., W. Horton et al., 1 Connecticut Practice Series: Superior Court Civil Rules (2020–2021 Ed.) § 23-14, authors' comments, p. 951 ("[Practice Book § 23-14] generally confers wide trial and docket management discretion on complex litigation judges—an appropriate thing . . . given the nature and purpose of the [C]omplex [L]itigation [D]ocket"). In my view, it would be untenable to construe § 23-14 to give complex litigation judges the power to dismiss a case without providing parties with a hearing as of right, particularly in such high stakes matters, when an ordinary slip and fall, negligence action would be the subject of a mandatory oral argument pursuant to Practice Book § 11-18 (a) before it could be dismissed. So, too, would it be contrary to principled tenets of civil procedure for a habeas court to dismiss a petition pursuant to Practice Book § 23-29 without affording the petitioner a hearing as of right.

More fundamentally, I am troubled by the analysis through which the majority arrives at its conclusion that a petitioner is entitled only to notice and an opportunity to be heard on the papers, but not oral argument as of right, prior to dismissal of the petition. As I explain hereinafter, the majority fails to analyze the issue in this case through the lens with which we have traditionally analyzed habeas actions, which are civil actions. See, e.g., *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 555. Although the majority acknowledges that habeas actions are civil proceedings, it nevertheless concludes that "the Rules Committee did not intend for the general provisions governing civil cases to resolve the question before us." I disagree. Well settled dictates of statutory construction require that we read provisions of our rules of practice together; because the procedures applicable to habeas actions do not answer the specific question before us, the only logical next

Brown *v.* Commissioner of Correction

step—in my view—would be to look to the general Practice Book scheme.

Nevertheless, following its conclusion that Practice Book § 23-29 is ambiguous, the majority seeks to divine the Rules Committee's intent in drafting that provision. The majority begins by looking to an earlier version of the provision, namely, Practice Book (1995) § 531 (repealed October 1, 1995), which provided for the dismissal of a habeas petition "without hearing" only if "a previous application brought on the same grounds was denied . . . unless [the application] states new facts or proffers new evidence not reasonably available at the previous hearing." The majority correctly notes that, when our rules of practice were amended, and Practice Book §§ 23-24 and 23-29 were adopted, the "without hearing" language in Practice Book (1978–97) § 531 was abandoned. See *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 355–56, 358–59, 199 A.3d 1127 (2018) (*Bishop, J.*, concurring), rev'd on other grounds, 345 Conn. 39,     A.3d     (2022). The majority concludes that the omission of this language in § 23-29 indicates that "the Rules Committee intended to require something more under [that section] . . . ." That "something more," in the majority's view, is not a full hearing but, instead, a right to be heard on the papers by filing "a brief or a written response . . . ." I disagree.

In my view, the majority simply cannot reach the conclusion that notice and a hearing are required prior to dismissal without acknowledging chapter 11 of the rules of practice. The only purported "authority" cited by the majority, supporting its notion that only notice and a hearing on the papers are required before dismissal, is the "textual difference between [Practice Book §§ 23-24 and 23-29] . . . ." I am unpersuaded that this textual difference "requires" much of anything. In my view, the true source of authority for these entitlements is chapter 11. See, e.g., Practice Book § 11-1

Brown *v.* Commissioner of Correction

(petitioner is entitled to notice of motion to dismiss); Practice Book § 11-10 (a) (petitioner is entitled to submit written brief in opposition to motion to dismiss).

Moreover, I would conclude that the Rules Committee's deletion of the language "without hearing" contained in Practice Book (1995) § 531 implies that the Rules Committee intended for habeas courts to hold a hearing on a habeas petition prior to its summary dismissal pursuant to Practice Book § 23-29. Indeed, had the Rules Committee intended for petitions to be dismissed on the bases enumerated in § 23-29 without a hearing, it would have continued to include the "without hearing" language in that provision, as it had previously included in Practice Book (1995) § 531. See, e.g., *Gilmore* v. *Pawn King, Inc.*, 313 Conn. 535, 546–48, 98 A.3d 808 (2014) (concluding that legislature's removal of certain language from prior version of statute indicated that legislature intended to effectuate change in subsequent version of statute). My interpretation, tellingly, also aligns with the mandate of chapter 11, which provides that "oral argument shall be a matter of right" on motions to dismiss. Practice Book § 11-18 (a).

The majority also draws on the legislature's 2012 habeas reform as support for its conclusion that, although the rules of practice require that a petitioner receive notice of the habeas court's intention to dismiss a petition and an opportunity to file a written response, "[i]t does not . . . necessarily follow from this premise that a habeas court's dismissal on its own motion pursuant to Practice Book § 23-29 requires a full hearing . . . ." Specifically, the majority appears to conclude that, given the amendments' intended purpose of " 'averting frivolous habeas petitions and appeals,' " the Rules Committee could not have intended to impose a hearing requirement when it adopted § 23-29, as this additional procedure would "[overburden] an already strained habeas docket . . . ." Although I agree that

Brown *v.* Commissioner of Correction

the *legislature's* 2012 reform measures were intended to create a mechanism for screening frivolous habeas claims and addressing the influx of habeas petitions, I disagree that this intent necessarily supports the majority's conclusion that the *Rules Committee* intended that habeas petitioners only be allowed the opportunity to submit a written brief—and not be afforded a hearing as of right—prior to a habeas court's dismissal of a petition under § 23-29. See, e.g., *Adams* v. *Rubinow*, 157 Conn. 150, 156, 251 A.2d 49 (1968) (explaining that, under separation of powers principles, "the General Assembly has no power to make rules of administration, practice or procedure [that] are binding on [our appellate courts or the Superior Court]"); *Heiberger* v. *Clark*, 148 Conn. 177, 185, 169 A.2d 652 (1961) ("[i]rrespective of legislation, the rule-making power is in the courts"); see also, e.g., *State* v. *McCahill*, 261 Conn. 492, 520B, 811 A.2d 667 (2002) (explaining that, under separation of powers doctrine, "the General Assembly lacks the power to enact rules governing procedure" (internal quotation marks omitted)).

To the extent the legislature's intent is relevant in this regard, we have made clear that, "notwithstanding the comprehensive nature of the 2012 habeas reform, through which five entirely new subsections were added to [General Statutes § 52-470], the legislature left intact the final clause of § 52-470 (a), which provides that the habeas court 'shall . . . dispose of the case as law and justice require.' Thus, the legislature retained language that makes clear that *the expeditious resolution of habeas petitions must be accomplished in a manner that does not curtail a petitioner's right to due process. In other words, the two principles of expediency and due process must be balanced in effectuating the legislative intent of the 2012 habeas reform.*" (Emphasis added.) *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 716–17. The petitioner's right to

Brown *v.* Commissioner of Correction

due process, in my view, includes the right to notice, to submit a written opposition, and an opportunity to be heard as of right, consistent with the rules of practice applicable to civil actions generally.[3]

I recognize the majority's concern that there may be instances in which the habeas court does not have the necessary information at the time of initial review to make a determination pursuant to Practice Book § 23-24. See footnote 8 of the majority opinion. However, it is not this court's role to erect a backstop in Practice Book § 23-29 and to inject exceptions into the general civil rules—in the form of an opportunity to be heard only on the papers—thereby circumventing petitioners' rights to a hearing. See, e.g., *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 215–16, 901 A.2d 673 (2006) ("[w]e must construe a statute [or Practice Book provision] as written . . . [and we] cannot rewrite a statute [or Practice Book provision] to accomplish a particular result" (internal quotation marks omitted)). Significantly, "this court has recognized on numerous occasions that [it] lacks authority to make changes to the rules of practice"; *State* v. *DeJesus*, 288 Conn. 418, 508, 953 A.2d 45 (2008) (*Katz, J.*, dissenting); as "the judges of the Superior Court are [the ones] empowered to adopt and promulgate rules regulating pleading, practice and procedure in judicial proceedings," and those rules "have the force of law." (Internal quotation marks omitted.) Id., 507 (*Katz, J.*, dissenting). With respect to the rules of practice, this court is not free to supplant its own policy preferences for those of the judges of the Superior Court. See, e.g., id., 507–508 (*Katz, J.*, dissenting); see also, e.g., *State* v. *Johnson*, 228 Conn. 59, 61–62, 634 A.2d 293 (1993) ("[a]lthough

_____

[3] Indeed, insofar as the majority is concerned about expeditious review of frivolous habeas petitions, Practice Book § 23-24 acts as a gatekeeper, as it "conserve[s] judicial resources by eliminating obviously defective petitions . . . ." *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 560.

Brown *v.* Commissioner of Correction

a clarifying amendment [to] the rules of practice to address the problem illuminated by this case might well be desirable, this court does not sit as the Rules Committee''); *State* v. *Jennings*, 216 Conn. 647, 665 n.11, 583 A.2d 915 (1990) (''We do not sit to decide the utility or need for written instructions in the Connecticut courts. To the extent that the defendant seeks such a decision, his request is more properly directed to the Rules Committee . . . .''). Put simply, ''[i]f the legislature [or the Rules Committee] desires a different result, it is a legislative function to rewrite the statute [or Practice Book provision] to achieve that result.'' *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, supra, 216.

In contrast to the majority's interpretation, I would look to the existing Practice Book provisions that pertain to all civil actions and provide an orderly and predictable answer to the question before us. Rather than rely on extratextual sources and perceived developments in the habeas rules to formulate an ''interpretation'' of the required procedures—and invite the Rules Committee, post hoc, to amend the text of the relevant rules as it deems appropriate—the majority should have applied the principled tenets of statutory construction, which dictate the procedures to which a habeas petitioner is entitled before a habeas court, on its own motion, dismisses a petition.

I begin my own analysis with the well established principle that ''[h]abeas corpus is a civil proceeding.'' *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970). Consequently, ''[a] habeas corpus action, as a variant of civil actions, is subject to the ordinary rules of civil procedure, unless superseded by the more specific rules pertaining to habeas actions.'' (Internal quotation marks omitted.) *Kendall* v. *Commissioner of Correction*, 162 Conn. App. 23, 45, 130 A.3d 268 (2015). Because the rules pertaining to habeas actions do not provide a more specific rule, I look to the broader Practice Book

Brown *v.* Commissioner of Correction

provisions governing civil actions, generally, in order to determine whether a petitioner is entitled to notice and a hearing prior to dismissal of a habeas petition.[4] See, e.g., *Gilchrist* v. *Commissioner of Correction,* supra, 334 Conn. 555; *Nelson* v. *Commissioner of Correction,* 326 Conn. 772, 782, 167 A.3d 952 (2017); see also, e.g., *Boria* v. *Commissioner of Correction,* supra, 186 Conn. App. 360–61 n.9 (*Bishop, J.,* concurring) (citing cases in which our Appellate Court applied provisions of general civil rules of practice to habeas actions).

Relevant to this case, chapter 10 of the Practice Book —titled "Pleadings"—and chapter 11—titled "Motions, Requests, Orders of Notice, and Short Calendar"—provide, among other things, the procedures applicable to motions to dismiss generally. Accordingly, in the absence of a more specific rule in the habeas section of our rules of practice, chapters 10 and 11 govern the procedural requirements a habeas court must satisfy before it dismisses a petitioner's habeas petition. Practice Book § 11-1 (a) provides in relevant part that "[e]very motion . . . directed to pleading or procedure . . . shall be in writing. . . ."[5] As we have explained, "[t]he requirement that parties file their motions in writing is to ensure that the opposing party has written notice of the motion to dismiss." *Herrmann* v. *Summer*

---

[4] The very structure of our rules of practice suggests that chapter 23 of the Practice Book is supplemental to, and works in conjunction with, the rules of practice governing civil actions generally. Chapter 23 is aptly titled "Miscellaneous Remedies and Procedures." It contains the specific provisions applicable to habeas actions; see Practice Book §§ 23-21 through 23-42; foreclosure of mortgages; see Practice Book §§ 23-16 through 23-19; mandamus actions; see Practice Book §§ 23-45 through 23-49; arbitration; see Practice Book §§ 23-60 through 23-66; and alternative dispute resolution. See Practice Book § 23-67. Chapter 23 is a subsection of the broad, general section, "Superior Court—Procedure in Civil Matters," which spans seventeen chapters detailing process in civil actions.

[5] Practice Book § 10-30 (b) also provides in relevant part that "[a]ny defendant, wishing to contest the court's jurisdiction, shall do so by filing a motion to dismiss . . . ."

Brown *v.* Commissioner of Correction

*Plaza Corp.*, 201 Conn. 263, 273, 513 A.2d 1211 (1986); see also Practice Book § 10-31 (requiring that nonmovant have opportunity to respond to motion to dismiss, providing for both legal argument and factual supplementation of record in response).[6] "[R]eceipt of adequate notice is essential in order for the nonmoving party to exercise [his] right under the [rules of practice] to be heard." *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 361 (*Bishop, J.*, concurring). As Judge Bishop recently noted in his concurrence in *Boria*, the rules of practice provide nonmoving parties to a motion to dismiss with two explicit opportunities to be heard. Id. First, Practice Book § 11-10 (a) provides an adverse party to a motion to dismiss the opportunity to submit a written opposition to the motion.[7] Second, pursuant to Practice Book § 11-18 (a), "as to motions to dismiss [and certain other motions] . . . oral argument *shall be a matter of right* . . . ." (Emphasis added.) The application of these rules of practice to

---

[6] Specifically, Practice Book § 10-31 provides: "(a) Any adverse party shall have thirty days from the filing of the motion to dismiss to respond to the motion to dismiss by filing and serving in accordance with Sections 10-12 through 10-17 a memorandum of law in opposition and, where appropriate, supporting affidavits as to facts not apparent on the record.

"(b) Except in summary process matters, the motion shall be placed on the short calendar to be held not less than forty-five days following the filing of the motion, unless the judicial authority otherwise orders. If an evidentiary hearing is required, any party shall file a request for such hearing with the court."

I note that the Rules Committee's—and, by extension, the Superior Court judges'—explicit decision, in subsection (b) of Practice Book § 10-31, to exclude summary process matters from placement on the short calendar is significant. Had the Rules Committee also intended for motions to dismiss in habeas actions to be excluded from placement on the short calendar, "it could have done so expressly . . . ." *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 605, 996 A.2d 729 (2010).

[7] Practice Book § 11-10 (a) provides in relevant part: "A memorandum of law briefly outlining the claims of law and authority pertinent thereto shall be filed and served by the movant with the following motions and requests . . . (2) motions to dismiss except those filed pursuant to Section 14-3 . . . . Memoranda of law may be filed by other parties on or before the time the matter appears on the short calendar."

this case leads to the conclusion that, pursuant to chapters 10 and 11, a habeas petitioner is entitled to notice, an opportunity to file a written opposition, and an opportunity to be heard before a matter may be dismissed under Practice Book § 23-29.

The application of the foregoing rules is no doubt most straightforward when it is the respondent who moves to dismiss pursuant to Practice Book § 23-29. See, e.g., *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 362 (*Bishop, J.*, concurring) ("In such circumstances, it is clear that the respondent must file a written motion and a memorandum of law and serve the same on the petitioner . . . . The effect of the service of the motion and brief is to provide the petitioner with the notice necessary for the petitioner to be able to . . . file a memorandum of law in opposition to the motion . . . and . . . claim the matter for oral argument . . . ."). Nevertheless, in my view, the aforementioned principles apply with equal force, albeit in a slightly different way, when the court moves to dismiss the petitioner's habeas petition on its own motion.[8] Most notably, the habeas court need not draft a formal motion to dismiss or file a memorandum of law in support of its own motion to dismiss. Practice Book § 10-30 (b) explicitly provides that "[a]ny *defendant*, wishing to contest the court's jurisdiction, shall do so by filing a motion to dismiss . . . ." (Emphasis added.) Similarly, Practice Book § 11-1 (a) explains that "[e]very motion, request, application or objection directed to pleading

_____

[8] I note that the majority opinion is silent as to whether the petitioner would be entitled only to notice and an opportunity to submit a written opposition, and no oral argument, when the respondent—instead of the habeas court—initiates the motion to dismiss. Practice Book § 23-29 makes no distinction between the two and provides that the habeas court may dismiss the petition, "at any time, upon its own motion or upon motion of the respondent . . . ." In my view, the majority opinion would have to be read to apply the same procedure regardless of who is the movant, which clearly is contrary to the ordinary course of civil procedure.

Brown *v.* Commissioner of Correction

or procedure . . . shall be in writing,'' but Practice
Book § 11-2 defines ''motion'' in relevant part as ''any
application *to* the court . . . .'' (Emphasis added.)
When the habeas court, on its own motion, moves to
dismiss a habeas petition, the motion is brought *by* the
court. Thus, these rules provide that the court need not
file a formal motion to dismiss or file a memorandum
of law when the court, on its own motion, moves to
dismiss the petition.

Although the requirement of a written motion to dis-
miss or a memorandum of law in support of the motion
is inapplicable when the habeas court moves to dismiss
the petition on its own motion, habeas petitioners, nev-
ertheless, are still entitled to notice, an opportunity to
submit a written brief, and an opportunity to be heard
prior to the court's dismissal of the petition. I agree
with Judge Bishop that, in the absence of an express
provision in Practice Book § 23-29 allowing the habeas
court to act without providing notice to the petitioner
and an opportunity to be heard on the court's motion,
''it is unreasonable and contrary to the rules pertaining
to civil matters generally for [an appellate] court to
import such a provision into § 23-29.'' *Boria* v. *Commis-
sioner of Correction*, supra, 186 Conn. App. 363 (*Bishop,
J.*, concurring). Indeed, even when the habeas court
moves to dismiss the petition on its own motion, Prac-
tice Book §§ 11-10 (a) and 11-18 (a) provide the peti-
tioner with an opportunity to be heard—both on the
papers and through oral argument as of right. Further-
more, when the motion to dismiss is placed on the short
calendar list; see Practice Book §§ 11-13 (a) and 11-
18 (a); the petitioner is provided with notice of the
proceeding. See Practice Book § 11-14 (''[n]otice of the
assigned date and time of the motion shall be provided
to attorneys and self-represented parties of record'');
cf. *Griswold* v. *Camputaro*, 177 Conn. App. 779, 792,
173 A.3d 959 (2017) (''[t]hese rules [of practice] imple-

Brown *v.* Commissioner of Correction

ment the fundamental principle of judicial administration [t]hat no matter shall be decided unless the parties have fair notice that it will be presented in sufficient time to prepare themselves upon the issue'' (internal quotation marks omitted)), aff'd, 331 Conn. 701, 207 A.3d 512 (2019).

My interpretation also serves to synergize Practice Book § 23-29 with Practice Book § 23-40 (a), which provides for the right of the petitioner to be present at "any evidentiary hearing and at any hearing or oral argument on a question of law which may be dispositive of the case . . . ." Although I acknowledge that this rule does not expressly require the habeas court to conduct a hearing prior to dismissal of a petition pursuant to § 23-29, I agree with Judge Bishop that the "provisions [of § 23-40] entitling a petitioner to be present at any dispositive hearing would be rendered illusionary if [the] petitioner had no right to a hearing at all.'' *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 360 (*Bishop, J.*, concurring). In my view, the clearer, most harmonious, interpretation of the interplay between §§ 23-29 and 23-40 would be to "conclude that the latter [rule] entitle[s] a habeas petitioner to notice and an opportunity to be heard before dismissal pursuant to § 23-29.'' Id., 360 n.8 (*Bishop, J.*, concurring).

For the foregoing reasons, I conclude that, in the absence of a more specific provision in the rules of practice pertaining to habeas corpus actions stating otherwise, the habeas court must apply all of the relevant general civil practice rules contained in chapters 10 and 11 when it considers dismissing a petition pursuant to Practice Book § 23-29. Application of those rules provides that petitioners are entitled to notice, an opportunity to submit a written opposition, and a hearing as of right prior to dismissal of their petition pursuant to § 23-29.

We have commented that "[b]oth statute and case law evince a strong presumption that a petitioner for a writ of habeas corpus is entitled to present evidence in support of his claims." *Mercer* v. *Commissioner of Correction*, 230 Conn. 88, 93, 644 A.2d 340 (1994). I would add that the rules of practice go further and require that habeas petitioners are entitled to present relevant information before a habeas court dismisses the petition pursuant to Practice Book § 23-29. Accordingly, I respectfully concur in the judgment.

————————————————